BENJAMIN CULP *v.* WOOTEN & AGEE.

1. MORTGAGE. *Absolute deed. Code* 1892, § 4233. *Possession. Fraud. Parol evidence.*

   Code 1892, § 4233, excluding parol evidence to show that a deed absolute in form is in fact a mortgage, recognizes the admissibility of such evidence.
   (a) Where the grantor has not parted with the possession of the property, and
   (b) Where the issue is one of fraud in the procurement of the deed, although the grantor may have parted with the possession of the property.

2. SAME. *Homestead. Abandonment.*

   When a husband and wife temporarily remove from their homestead and cultivate other lands for a year or two, leaving their children in the occupancy of the home, intending themselves all the time to return to it, they have not parted with its possession.

3. SAME. *Facts examined.*

   Facts examined touching the procuring of a deed absolute in form and adjudged sufficient to present an issue of fraud, for the determination of a jury as to whether the instrument was not in fact a mortgage.

FROM the circuit court of, first district, Coahoma county.

HON. FRANK E. LARKIN, Judge.

Wooten & Agee, appellees, were plaintiffs in the court below; Culp, appellant, was defendant there. The facts are fully stated in the opinion of the court.

*Fitzgerald & Maynard,* for appellant.

The right of possession to the land in controversy is the only question involved in this case.

A mortgagor is entitled to possession of lands conveyed thereunder, until default is made in the payment of the debt secured, and demand made by the mortgagee for the purposes of a sale.

A conveyance or other writing absolute on its face, where the maker does not part with the possession of the property conveyed by it, can be shown by parol evidence to be only a mortgage. Code 1892, § 4233.

This has been so held by our courts and is no longer an open question. If it is the intention of the parties that the deed should have the effect of a security for a debt, the maker remaining in possession of the property, the courts will give that effect to the instrument. *Fultz* v. *Peterson,* 78 Miss., 128.

Some of the tests of a mortgage which are almost conclusive are the following: 1. That there was a borrowing and lending and an obligation to repay incurred. 2. That the relation of creditor and debtor existed before the conveyance and continued. 3. That there was a great disparity as to the price.

Our courts will permit parol evidence to show the intention of the parties, and it will be permitted to penetrate all subterfuges, cloaks and disguises surrounding the transaction, and disclose all fraud or inequitable conduct of either party thereto.

A conveyance or other writing absolute on its face, where the maker parts with possession of the property conveyed by it, can be shown by parol evidence to be a mortgage only where fraud appears in its procurement. Code 1892, § 4233.

Where a debtor executes a conveyance of land to his creditor absolute on its face, with a verbal agreement for a reconveyance upon payment of the debt, our courts will treat the deed as a mortgage. This proposition of law requires no argument, nor citation of authority. Our court, as well as the supreme court of the United States, are committed to it, and it is sound law. *Grocery Co.* v. *Leach,* 71 Miss., 959.

If a debtor executes to his creditors a deed absolute on its face, with the intention and understanding on his part that the same shall operate only as a mortgage to secure the balance of his debt not then ascertained, because of certain payments to be made thereon from sales of personal property to be delivered to his creditors, then the courts will hold and construe such instru-

ment to be only a mortgage, although it may appear that the creditor intended it to be an absolute deed of conveyance, provided the conduct of the creditor was inequitable, or provided the creditor knew at the time of the conveyance or ought to have known from the situation the conduct and conversation of his debtor that his intention was to execute an instrument to operate as a security for his debt, or where it appears that there was some relation of trust and confidence between the parties that has been abused, or where there was fraud on the part of the creditor, accompanied by a mistake on the part of the debtor, or where some undue advantage was taken of the debtor.

It is not competent to contradict or vary by parol the words of a written contract, unless the language used is susceptible of different meanings, and, when so susceptible, it is always competent to inquire what the parties understood it to mean, and to show the relation of the parties to each other, the subject of the contract, the conversation of the parties leading up to the contract, and all the surrounding circumstances so as to ascertain the intent. *Gillenwaters* v. *Miller,* 49 Miss., 150.

In construing a written instrument to 'determine whether it is a deed or a mortgage, the courts lean in favor of a mortgage in case of any doubt.

We claim in this case that it is a fraud, under all the circumstances of the execution of the deed by appellant, for appellees to insist that they did not intend for the instrument to be a mortgage. They are estopped from denying that.

*Rucks Yerger,* for appellee.

The defendant having given an absolute deed to the property, if he parted with the possession his rights terminated, except in case of fraud. Code 1892, § 4233. Was possession parted with, is the only question on this branch of the case.

There is practically no conflict in the testimony on this point. The evidence shows clearly that defendant Culp, at the time he made the deed, and for a year or two preceding, lived on the

"Island Place," not the land in controversy. That his sons lived on the land in controversy at the time the deed was made, working same on "shares" with their father, and making contracts with merchants for supplies.

What is the attitude of the parties if the defendant did not part with the possession? The appellees contend that even in this view of the case the judgment of the lower court was correct and should be affirmed.

The instructions fairly present to the jury all the questions in the case and their verdict is supported by the testimony. The sole question in this case considered in this light was whether the absolute deed made by the appellant Culp was intended by both parties, not by Culp alone, but also by Wooten & Agee, to be a security.

CALHOON, J., delivered the opinion of the court.

Wooten & Agee brought their action of unlawful entry and detainer against Culp for the possession of certain land, lost their case before the court of the justice of the peace, appealed to the circuit court, won there, and Culp appeals to this court.

Under the law once existing here, a deed absolute on its face might be shown, by parol, to be in fact a mortgage to secure a debt. Section 1299 of the code of 1880, brought forward in § 4233 of the code of 1892, introduced a modification of this doctrine by providing that an absolute deed should be shown by parol evidence to be a mortgage where the maker of the deed parts with the possession of the property, unless fraud in its procurement be the issue to be tried. The defenses which Culp makes to the action are that the absolute deed which he executed was designed to be a mortgage, and that its execution was obtained by fraud; and he claims that he never parted with the possession of the land. Of course if he never parted with possession, he may, under the law as modified, show by parol that the conveyance was designed to be a mortgage; and whether he parted with the possession or not, he may show that it was procured by fraud. There is

evidence in this record tending to show that possession was never parted with. The land was Culp's homestead, and was all the land he owned in the world. The fact that he and his wife quit it, for a year or two, to cultivate rented land, to better their condition, with the purpose to return, was no abandonment, where they left some of their children in occupation. This last fact was possession in this case, regardless of any technical questions of abandonment of homesteads, which really cut no figure in this record on the matter of parting with possession under the clause in our statute of frauds above referred to. In any view of the testimony here, it is stating the case very mildly to say that, on the evidence as a whole, it is not certain that appellant would have lost below if the jury had been left to act on that isolated question. In the next place, whatever the real facts may be, it cannot be gainsaid that there is testimony tending to show that this illiterate negro was the victim of a fraud, by which he was deprived of everything he had on earth, of land and personal property, accomplished by a violation of trust and confidence. Finally, there is evidence in this record that Culp understood the instrument to have the effect only of a mortgage, with five years to him in which to redeem. That he had this understanding from assurances given him by appellees is also largely supported by evidence. Both these propositions are supported by the testimony of Culp and his wife, and that of reputable disinterested witnesses, who heard part of the colloquy leading up to the execution of the instrument by Culp and his wife, whose joinder in it could have been required by Wooten & Agee for no other reason than that they recognized that it was the homestead which was being conveyed. The two propositions mentioned might also be argued to be sustained by the probabilities of the transaction. Culp owed Wooten & Agee, as they say, $1,480, but, as he says, about $1,000. He says he agreed to put in their hands all of his personalty for them to sell and put the proceeds to his credit, and that the absolute deed was to secure any possible balance, to be redeemable by payment

of $100 per annum. He estimates the personalty which he turned over to them as worth in fact more than the debt, while they do not make any estimate, nor show what they realized from its sale. He estimated the land conveyed to them at $2,000. It might be concluded from the proof that the land alone was worth·at least the whole amount of the debt. It might be inferable from the record, according to the rationale of human transactions, that Wooten & Agee wanted this negro's land in preference to the payment of his debt. There was disinterested testimony that they appealed to his confidence in them, assured him it would be all right, and thus induced him and his wife to sign the deed. At the same time they gave him this document: "Friar's Point, Miss., June 12, 1900. It is hereby agreed that all the personal property turned over to Wooten & Agee is to be sold at best advantage, and placed to the credit of Ben Culp on account. (Signed) Wooten & Agee, by Z. D. Agee." The deed they took from the negro recites for its consideration $1,000 paid "to satisfy in part the indebtedness of said second parties" to them. They say they then rented the place to him for $100 for one year, and took his rent note for $125, the extra $25 being for a mare they say he had not turned over; and yet the rental value of this land is $7 per acre. They testify also that, when Culp went to see them about staying on the place and paying his debt, they informed him that he had "balanced his account." This balancing was by getting all the negro had, and, according to him, by getting property, real and personal, of value far in excess of the debt. Certain it is there is no showing of the account on which the sale of the personalty was to go "as a credit," and there is no further explanation of the fact that the negro stripped himself of all he had than that he did it to balance his account, with the only proviso that he should have only the overplus from the sales of the personalty. It might be asked if these sales, added to the $1,000 for the land, balanced his account to a cent. Wooten & Agee totally deny any such talk in the chancery clerk's office when the deed was

executed, about this instrument being a security only, as is testified to by Ben Culp, Judy Culp, Fitzgerald and Hooker. With the case in this situation the court refused an instruction, asked by Culp's counsel, that the jury should find for him if they believed from the evidence that he did not part with the possession of the land, and that the deed was agreed to be a security for the debt, or that it was procured by fraud. This refusal we think was error. The jury should have been allowed to pass on the question of whether the execution of the instrument was procured by fraud. If there was such fraud, it is immaterial whether Culp did or did not part with the possession of the land.

The plaintiffs' third instruction, we think, should not have been given. It charges the jury to find for plaintiffs unless they believed from the evidence that Culp "had never given up possession of said place to said plaintiffs." This is too narrow, in that it excludes any consideration of any question of fraud.

We are of opinion, also, that there is error in giving plaintiffs' fourth charge. Because Wooten & Agee intended the instrument to be a simple deed, and not a security for debt, does not warrant recovery if there was fraud, or if possession was not parted with, and Culp was led to believe by their assurances that it was redeemable.

*Reversed and remanded.*