[Civ. No. 3024.    Third Appellate District.—March 4, 1926.]

AUBER B. STEVENS, Respondent, v. GEORGE C. FETTERMAN et al., Appellants.

[1] DEEDS—MORTGAGES—INTENT—PRESUMPTION—EVIDENCE.—While a deed absolute upon its face may be shown by parol to have been intended by the parties thereto to stand as security for the payment of a debt and, therefore, to operate as a mortgage only, and not as an absolute conveyance of the fee, or whatever mortgageable estate or interest the grantor may have therein, the presumption of law, independent of proof, is that a deed granting real property is what it purports to be, viz., an absolute conveyance, and

---

1.  See 17 Cal. Jur. 755.

this presumption must prevail unless the evidence to the contrary is sufficient in probative force to overcome or entirely destroy it.

[2] ID.—DEED INTENDED AS MORTGAGE—BURDEN OF PROOF.—The burden of proving that a deed was intended by the parties to operate solely as a mortgage is upon the party taking the affirmative of that issue.

[3] ID.—CHARACTER OF EVIDENCE.—To justify a court in determining for oral testimony that a deed purporting to convey real property absolutely in fee simple was intended to be something different, as a mortgage or trust, such testimony must be clear, convincing, and conclusive—something more than that modicum of evidence which appellate courts sometimes hold sufficient to warrant a finding where the matter is not so serious as the overthrow of a clearly expressed deed, solemnly executed and delivered.

[4] ID.—EVIDENCE—INTENT—QUESTION FOR TRIAL COURT.—The question whether the evidence is of such character and strength as to produce the conviction that a deed was in fact intended as a mortgage is a question for the trial court to determine; in other words, it is solely the function of the trial court to determine whether the evidence introduced to overcome the presumption that a deed is what it purports to be and that it was not the intention of the parties that it should operate as a mortgage is or is not clear, satisfactory, and convincing.

[5] ID.—QUIETING TITLE—CHARACTER OF CONVEYANCE—FINDINGS—EVIDENCE.—In this action to quiet title to real property in which the defendants claim that the deed through which plaintiff derived title to said property is a mortgage securing an alleged indebtedness from defendants to plaintiff, the findings of the trial court to the effect that the deed to plaintiff is what upon its face it purports to be, to wit, an absolute conveyance of the land therein described to plaintiff, are supported by the evidence.

[6] ID.—CAPACITY OF ONE OF DEFENDANTS IN TRANSACTION—FINDINGS—EVIDENCE.—In such action, the claim that there is no evidence which lends support to the findings that the deal through which plaintiff derived title to the property in question was conducted by one of the defendants in the capacity of a real estate broker, and that the latter had no further or different connection with that transaction, is not well founded.

---

(1) 41 C. J., p. 345, n. 8, p. 350, n. 39.    (2) 41 C. J., p. 346, n. 13.
(3) 41 C. J., p. 357, n. 72.    (4) 4 C. J., p. 844, n. 66, p. 877, n. 80.
(5) 41 C. J., p. 354, n. 62.    (6) 32 Cyc., p. 1372, n. 26.

2.  See 17 Cal. Jur. 756; 19 R. C. L. 263.
3.  See 17 Cal. Jur. 756; 19 R. C. L. 263.
4.  See 17 Cal. Jur. 757.

APPEAL from a judgment of the Superior Court of Los Angeles County. Ira F. Thompson, Judge. Affirmed.

The facts are stated in the opinion of the court.

James P. Clark for Appellants.

Henry L. Knoop for Respondent.

HART, J.—This action is by the plaintiff to remove a cloud from the title to the real property described in the complaint and so to quiet his title thereto. Judgment passed for the plaintiff and the defendants appeal therefrom upon a bill of exceptions.

The controversy is the outgrowth of several transactions, involving, in so far at least as it is required to present a clear understanding of the situation as it is portrayed by the record, three different and distinct pieces of real estate. The real property described in the complaint and as to which relief is herein sought by the plaintiff was at one time owned by one James Keeney and is situated near the city of Azusa, in Los Angeles County. The other two properties are, respectively, a certain bungalow court, in which there are or were several bungalows, said property being situated in the city of Los Angeles and was formerly owned by the plaintiff, and the third consisting of five lots located in the city of Pasadena and owned by Rosa Fetterman, codefendant and wife of George C. Fetterman. For convenience and clarity, and, following the briefs of the parties in that respect, we will refer to these properties herein as the "Keeney property," the "Stevens Dwellings" or "Diamond Hill Tract," and the "Fetterman or Pasadena lots or property."

On August 22, 1923, the plaintiff and defendant, George C. Fetterman, entered into a contract whereby they agreed to an exchange of the "Stevens Dwellings" and the furniture in the bungalow occupied by plaintiff for the Pasadena lots and the sum of $15,000. As stated, the Pasadena lots were the property of Rosa Fetterman, but George C. Fetterman, in the transaction just mentioned, was her duly appointed attorney-in-fact. Each of the conveyances, in case the agreement of exchange was consummated, was to be subject to certain encumbrances on the respective properties. The

terms of the agreement were to be carried out through an escrow to be handled and administered by the Los Angeles Title Insurance Company. Accordingly, the parties deposited with said company the said agreement and deeds to the respective properties, together with escrow instructions.

The agreement provided, among other things, that one William H. Dennis should act as the agent of plaintiff in negotiating the exchange of said properties upon the terms specified in the agreement and that ''when he has secured an acceptance of the proposition to exchange the above described property on the above terms, I will then pay the sum of $250 as commission for such services.'' The escrow instructions on the part of said Fetterman contained the following: ''I will hand you $15,000 which you are authorized to use in connection with your above escrow number (No. 237,985) on condition that you issue your one continuation guaranty of title in your usual form on the following described property situated in the County of Los Angeles,'' following which is a description of the Stevens Dwellings or the Diamond Hill tract. The escrow instructions on the part of the plaintiff contained, among other things, the following: ''I will hand you a mortgage and note for $15,000 and a Tr. deed and note for $20,000 to be shown as first and second encumbrances on said lots. I will hand you a bill of sale of furniture in buildings on said lots. I will hand you an agreement to buy said lot which you are authorized to use in connection with your above escrow number on condition that you issue your one continuation guaranty of title in your usual form on the following described real property situated in the County of Los Angeles,'' following which is a description of the lots in the city of Pasadena and owned by the defendant Rosa Fetterman. Said instructions also contained the following: ''Pay $250 commission to William H. Dennis. Received from me $15,000 as a bonus in exchange.'' The life of the escrow was to be for thirty days—that is, the agreement for the exchange was to be consummated within thirty days. Fetterman failed to perform the agreement on his part within the time limited by the instrument, and on October 8, 1923, the plaintiff addressed to him a letter demanding compliance by him with the terms of said agreement. The letter concluded thus:

"Unless you fully perform said terms, promises and conditions on or before the 13th day of October, 1923, the undersigned will take such proceedings as in the premises he may be justified. He notifies you, however, that he will hold you at all times bound by the terms of said agreement and he will at all times hold and consider said agreement binding and in full force and effect."

Notwithstanding the above notice to or demand upon him to perform the terms of the agreement, Fetterman failed to do so, and on October 23, 1923, the plaintiff instituted an action against him for damages for a breach of said agreement. The summons and a copy of the complaint in said action were duly served on Fetterman, but the litigation was not proceeded with because of an agreement entered into by and between the parties on the thirtieth day of October, 1923. The salient provisions of said agreement read:

"Now, therefore, in consideration of the premises above recited and of the following promises and terms, the parties hereto agree one with the other as follows:

"1. G. C. Fetterman will cause to be delivered at once to Auber B. Stevens a certain deed now held by California Title Insurance Company in connection with the escrow instructions hereinabove referred to, being said company's said escrow No. 237,985, and said deed conveying to said Auber B. Stevens the following described property, to-wit (the five Pasadena lots). . . .

"2. Auber B. Stevens will upon the delivery to him of said deed give to said G. C. Fetterman a dismissal in writing in form required by law of the said action hereinabove referred to, being case No. 130,802.

"3. Auber B. Stevens hereby grants G. C. Fetterman an option to purchase from him (the Stevens Dwelling) . . . including furniture now in said tenements, for the total purchase price of $15,000. said sum to be paid as follows: $12,000.00 in cash on or before forty-five (45) days from the date hereof, and $3,000.00 on or before six (6) months from the date hereof, the said $3,000.00 to be evidenced by a promissory note executed by said G. C. Fetterman and Rosa Fetterman, his wife, and delivered to said Auber B. Stevens simultaneously with the said $12,000.00. . . . Unless the said G. C. Fetterman exercises the said option within the period

of forty-five days from the date hereof, said option shall be null and void and the said G. C. Fetterman shall have no interest, right, title or estate whatsoever in or to the said last described real property or any part thereof.

"4. . . .

"5. . . .

"6. The parties hereto will prepare escrow instructions and deliver same to California Title Insurance Company 'for the purpose of further carrying out the terms of this agreement."

Said agreement was deposited in escrow with the title insurance company, above referred to, accompanied by certain instructions, in substance as follows:

"You may deliver the deed of (Pasadena lots) . . . to the grantee therein named at this time, and hold escrow open for completion later, provided said Auber B. Stevens extends time of closing escrow to 45 days from this date (Oct. 30, 1923). You will not be held responsible for any loss on my part for so doing, as I assume all responsibility, and in case I do not deposit in escrow $12,000.00 of the $15,000.00 to be deposited by me on or before Dec. 15, 1923, and a trust deed and note for $3,000.00 secured thereby for balance of said $15,000.00 to be shown as a next lien on said (Stevens Dwellings) . . . , I will not call for return of deed. . . .

"In case you use my deed as above provided for, you will receive a dismissal of suit No. 130–802 Sup. Ct. and file same in said suit."

Fetterman did not exercise the option to purchase the Stevens Dwellings given him by the agreement of October 30, 1923, within the forty-five days to which the life of said option was limited. Fetterman never at any time deposited with the title insurance company, nor did he ever pay to plaintiff, the sum of $12,000 which he was to have deposited with said company in pursuance of the agreement, nor was the trust deed for the $3,000 ever delivered to the title insurance company or to plaintiff. After and upon the expiration of the period of forty-five days within which the said Fetterman was at liberty under said agreement to purchase the Stevens Dwellings, the action by the plaintiff against George C. Fetterman for damages for the failure of the latter to perform the terms of the agreement between plain-

tiff and said defendant executed on and dated the twenty-second day of August, 1923, was dismissed and the deed by said Fetterman conveying to plaintiff the Pasadena lots was delivered to the latter, all in pursuance of the terms of the agreement of October 30, 1923.

After the transactions above spoken of were closed, George C. Fetterman, who was, during all the times mentioned herein, a real estate broker, continued to make efforts to negotiate the sale of the Stevens Dwellings, although, according to the testimony of plaintiff, he (Fetterman) had never been by plaintiff clothed with authority to do so. While thus engaging his attention, said Fetterman met James A. Keeney, who, with his wife, owned the "Keeney property," which is the real property described in the complaint and involved in this action. "Toward the latter part of December," (1923) proceeds the respondent's brief, which accurately states the facts in this immediate connection, "a tentative deal was arranged by Mr. Keeney and Mr. Fetterman. By the terms of this deal it was provided that Mr. Keeney should secure a first mortgage loan of $10,000 upon the Keeney property; that Mr. Keeney should convey the Keeney property subject to said encumbrance to the plaintiff and should pay the plaintiff the $10,000 so borrowed, and the plaintiff in consideration thereof should convey the Stevens Dwellings subject to existing encumbrances to Mr. Keeney. The plaintiff's first knowledge of this deal, as well as of all prior negotiations between Mr. Keeney and Mr. Fetterman, came to him during the latter part of December from Mr. Wm. H. Dennis, the broker mentioned in the original exchange agreement. Mr. Dennis no longer represented any of the parties in this action, nor did he represent Mr. Keeney. He was, however, very anxious that the plaintiff should consummate some sort of a deal involving the Stevens Dwellings with Mr. Fetterman, inasmuch as he had agreed with the plaintiff not to demand the payment of the commission which he had earned by securing the acceptance of the original exchange agreement by Mr. Fetterman unless and until the plaintiff should consummate a deal of some kind with Mr. Fetterman. . . . During the last week in December the plaintiff first discussed this deal with Mr. Fetterman, and after some bickering, he finally agreed to convey the Stevens Dwellings to the Keeneys and give Mr.

Fetterman a ninety-day option to purchase the Keeney property for five thousand and some odd dollars in consideration of the conveyance to him of the Keeney property, subject to the $10,000 mortgage, and the payment of $10,000 in cash. The Keeneys receiving nothing in this deal from Mr. Fetterman. No agreement in writing was executed by any of the parties, but suitable escrow instructions were executed by the plaintiff and Mr. Keeney on the 3rd day of January, 1924. Mr. Fetterman did not become a party to this escrow until January 29th, when he executed the following instructions:

" 'You may close escrow in accordance with instructions of James A. Keeney who is to acquire title to said lots 3–4 and 5 (the Stevens Dwellings), and is conveying as part payment thereof certain property of which he is the owner. The intention being that I pay all charges of which I agree to pay and you will not be called on to deliver any papers or property to me by reason of this escrow, as I have arranged an option and agreement as to the property in Sec. 4 (the Keeney property), outside of escrow.'

"On January 9th, 1924, an option agreement was executed by the plaintiff and Mr. Fetterman. By the terms of that agreement the plaintiff gave and granted to George C. Fetterman an option to purchase the Keeney property at any time within ninety days from the date thereof for $5,033.33, and certain interest and other sums. At the request of Mr. Fetterman, that agreement was amended by interlineation by substituting Rosa Fetterman in the place of George C. Fetterman. Some time thereafter, but under the same date, the option agreement involved in this action was executed by plaintiff to the defendant Rosa Fetterman, the latter acting through George C. Fetterman, her attorney in fact. The latter agreement was intended to, and did, supersede the former. Both agreements were identical in form except that in the latter all the sums required to be paid by the defendant Rosa Fetterman in order to exercise the option were set out in dollars and cents. That agreement reads as follows:

" '1. Auber Browne Stevens agrees to sell and convey to Rosa Fetterman that certain real property situated in the county of Los Angeles, state of California, and bounded and described as follows (the Keeney property): . . .

" '2. Rosa Fetterman agrees to pay to and said Stevens agrees to take and accept for said property the sum of $5,033.33, together with interest upon $5000.00 of said sum at the rate of seven per cent per annum from the date of this agreement to the date of payment of the principal sum of $5033.33. Said Rosa Fetterman further agrees to repay to said Stevens (1) the sum of $98.61 paid by Stevens to James A. Keeney and Louella Keeney, on account of the premium upon unexpired fire insurance on the house situated on the above described property; (2) such sum or sums as said Stevens may be required to pay on account of taxes and assessments levied upon and against the above described property; and (3) such sum as said Stevens shall be required to pay as interest upon that certain $10,000.00 mortgage executed by James A. Keeney and Louella Keeney to Azusa Valley Savings Bank of Azusa, California.

" '3. The term of this option is ninety days from and after the date hereof.

" ' '4. If the said Rosa Fetterman pays the said sum of $5033.33 and the interest accrued thereon and repays the amount paid on account of premiums on fire insurance and taxes and assessments, if any, to said Stevens during the term of this option said Stevens promises and agrees to execute and deliver to said Rosa Fetterman forthwith a grant deed conveying said property to said Rosa Fetterman, subject, however, to the liens and incumbrances herein specified.

" '5. If said Rosa Fetterman fails to pay the said sum of $5033.33 and accrued interest and fails to repay such sum or sums as said Stevens shall have paid on account of premiums on fire insurance and taxes and assessments during the term of this option, then this option and all the rights of the parties thereunder shall forthwith cease and determine.' "

The defendants, on the eighth day of April, 1924—the last day of the period of time within which they were authorized by the above option agreement to exercise their right or option to purchase the Keeney property—filed the said option agreement with the county recorder of Los Angeles County for recordation and the same was duly recorded by said recorder. The evidence without conflict shows that the defendants, or either of them, never exercised the option

within the time specified and limited by the option agreement, and that there never was any attempt by either to exercise said option until the twenty-second day of May, 1924, or approximately a month and a half after the option had expired by force of its own terms, and twenty-one days subsequent to the commencement of this action, when the defendant, George C. Fetterman, addressed and mailed a letter to the plaintiff to the effect that he was "now prepared to pay" plaintiff the sum of $5,033.33, together with interest upon the $5,000 and the amount of money paid by plaintiff for insurance and taxes on the Keeney property, and offering to deposit the money in any responsible bank or title company, in the discretion or at the pleasure of plaintiff, the latter to deposit a deed to the Keeney property "as per our agreement" (the option agreement of January 9, 1924).

As before stated herein, the purpose of this action was to remove from the real property described in the complaint the cloud created and existing by reason of the recordation by the defendants in the office of the county recorder of Los Angeles County of said agreement of option.

The complaint is in the usual form of actions instituted under section 738 of the Code of Civil Procedure for the purpose of determining a claim by a party to an interest or estate in real or personal property and sets forth facts substantially as they are above stated respecting the option agreement last hereinabove referred to and the outcome thereof.

The answer denies that plaintiff is or at any time ever was the owner of the real property described in the complaint; alleges that defendants acquired title to said property by purchase from said Keeney, on the ninth day of January, 1924; that at that time defendants were indebted to the plaintiff in the sum of $5,000 and two other smaller sums totaling $131.94, and to secure said indebtedness, defendants caused said Keeney to convey said property to plaintiff, said sums so secured to be paid within ninety days after January 9, 1924; that defendants have not paid said sums to plaintiff, averring, however, that, on the twenty-second day of May, 1924, they offered to pay plaintiff the full amount of their indebtedness to him, as indicated above, but that plaintiff refused to accept the same. The relief prayed for by defendant is: That the deed by Keeney con-

veying said property to plaintiff be determined and declared to be a mortgage to secure the payment of the indebtedness of defendants to plaintiff; that defendants be given the right to pay said indebtedness and discharge said mortgage, and that, upon the payment of said total indebtedness or any sum or sums found to be due to plaintiff from them, said defendants are entitled to a deed from plaintiff reconveying said real property to them. The plaintiff, upon the assumption that the answer of defendants was as well a cross-complaint, filed an answer to the affirmative averments of defendants' pleading.

The findings are specific and embrace a decision favorable to plaintiff upon every vital fact in the case. Among other things, the court found that at some time prior to the third day of January, 1924, the defendant, George C. Fetterman, learned that the Keeneys were desirous of selling or otherwise disposing of the property involved herein, that he succeeded in bringing the Keeneys and plaintiff together in negotiations for the exchange of their respective properties, and that on the date just named the Keeneys and the plaintiff entered into the exchange agreement above mentioned and finally consummated the same as above indicated; that defendant, George C. Fetterman, "did not pay, give, transfer, convey or assign to the plaintiff or to the said Keeneys anything of value whatsoever as a consideration or inducement for the transfer of said properties other than his services as a real estate broker"; that, at the time said exchange was effected, said defendants were not, and neither of them was, indebted to plaintiff in any sum or amount whatsoever and "neither of them is now" so indebted.

The defendants contend, as is indicated by their answer, that they acquired the real property in dispute by purchasing the same from the Keeneys, that, being indebted to the plaintiff in the total sum of $5,131.94, they authorized the Keeneys to convey the property to plaintiff, to be by him held as security for the payment to him of said indebtedness, and that the agreement of January 9, 1924, while upon its face an option agreement only, was in fact intended and understood by the parties to be a defeasance agreement, and that it and the deed from the Keeneys to plaintiff should together be considered as a mortgage or trust deed to secure

the payment of the several sums therein mentioned and totaling, as stated, the sum of $5,131.94. They undertook in the court below and undertake here to connect the transaction culminating, through the efforts of George C. Fetterman, in the conveyance of the Keeney property to plaintiff with the previous transactions involving an attempt upon the part of George C. Fetterman to purchase from the plaintiff the Stevens Dwellings and which, as above shown, failed of consummation, contending, however, that the conveyance by said Fetterman to plaintiff of the Pasadena lots was not part of the consideration moving from him for the dismissal of the damage action above explained, but as in part payment for the Stevens Dwellings, there remaining still to be paid on that transaction under the agreement relating thereto the sum of $15,000; that the payment by the Keeneys to the plaintiff of the sum of $10,000 on the deed resulting in the conveyance of the Keeney property to plaintiff constituted a payment on the said $15,000 then still due on the Stevens Dwellings transaction, and that there then remained due plaintiff from defendants on the latter transaction the sum of $5,000, together with some smaller sums incidentally accruing in the Keeney transaction, aggregating $131.94, making, as seen, a total of $5,131.94, to secure which the deed from the Keeneys to plaintiff was given and the defeasance (option) agreement between plaintiff and defendants was executed to become effective as in destruction of the force of the Keeney deed upon the payment of said sum by defendants to plaintiff.

As will be seen, the important ultimate question submitted for decision by the trial court was whether the transfer of the Keeney property to plaintiff was intended by the defendants and the plaintiff to operate as a mortgage and as security for a debt due the latter from the former. Obviously, if defendants were in no way indebted to plaintiff by reason of the Stevens Dwellings transaction under the agreement of August 23, 1923, then the very foundation upon which they have planted their position in this case, as indicated by their special defense or cross-complaint, is demolished. If there was no debt or other legal obligation to be paid or performed by defendants to or for the plaintiff, then, of course, the conveyance could not be a mortgage.

(*Ahern* v. *McCarthy,* 107 Cal. 382 [40 Pac. 482]; *Henley* v. *Hotaling,* 41 Cal. 22, 27; *Montgomery* v. *Spect,* 55 Cal. 352, 353; *Todd* v. *Todd,* 164 Cal. 255, 258 [128 Pac. 413]; *Chapman* v. *Hicks,* 41 Cal. App. 158, 162 [182 Pac. 336].) [1] It is also true, as a legal proposition, that while a deed absolute upon its face may be shown by parol to have been intended by the parties thereto to stand as security for the payment of a debt and, therefore, to operate as a mortgage only, and not as an absolute conveyance of a fee, or whatever mortgageable estate or interest the grantor may have therein (*Ahern* v. *McCarthy,* 107 Cal. 382, 383 [40 Pac. 482]; Pomeroy's Equity Jurisprudence, 2 ed., sec. 1196), it is also true that the presumption of law, independent of proof, is that a deed granting real property is what it purports to be, viz., an absolute conveyance, and that this presumption must prevail unless the evidence to the contrary is sufficient in probative force to overcome or entirely destroy it. (*Wadleigh* v. *Phelps,* 149 Cal. 627, 637 [87 Pac. 93].) Equally settled are these propositions: [2] 1. That the burden of proving that a deed was intended by the parties to operate solely as a mortgage is upon the party taking the affirmative of that issue (*Woods* v. *Jensen,* 130 Cal. 200, 203 [62 Pac. 473]). [3] 2. That, to justify a court in determining from oral testimony that a deed purporting to convey real property absolutely in fee simple was intended to be something different, as a mortgage or trust, "such testimony must be clear, convincing and conclusive—something more than that modicum of evidence which appellate courts sometimes hold sufficient to warrant a finding where the matter is not so serious as the overthrow of a clearly expressed deed, solemnly executed and delivered." (*Sheehan* v. *Sullivan,* 126 Cal. 189, 193 [58 Pac. 543]; *Mahoney* v. *Bostwick,* 96 Cal. 53, 58 [31 Am. St. Rep. 175, 30 Pac. 1020]; *Sherman* v. *Sandell,* 106 Cal. 373, 375 [39 Pac. 797]; *Ganceart* v. *Henry,* 98 Cal. 281, 284 [33 Pac. 92]; *Emery* v. *Lowe,* 140 Cal. 379, 384, 385 [73 Pac. 981]; *Kohn* v. *Parent,* 174 Cal. 570 [163 Pac. 1008].) [4] 3. That whether the evidence is of such character and strength as to produce the conviction that a deed was in fact intended as a mortgage is a question for the trial court to determine. (*Mahoney* v. *Bostwick, supra; Brison* v. *Brison,* 90 Cal. 323 [27 Pac. 186].) In other words, it is solely the function of the trial court

76 Cal. App.—48

to determine whether the evidence introduced to overcome the presumption that a deed is what it purports to be or that it was not the intention of the parties that it should operate as a mortgage is or is not clear, satisfactory, and convincing. (See, also, *Barry* v. *Beamer*, 8 Cal. App. 200, 213 [96 Pac. 373].)

As is to be inferred from the above general statement of the facts, the Fettermans do not claim that they were or became indebted to the plaintiff in the aggregate sum named in their answer or cross-complaint or in any sum by reason of any transaction other than that eventuating in the execution by George C. Fetterman and plaintiff of the agreement last hereinabove considered. It will be noted that the last agreement between plaintiff and George C. Fetterman relative to the purchase by the latter of the Stevens Dwellings (hereinabove quoted in part), after specifically setting forth the consideration therefor, to wit: On the part of plaintiff, the dismissal of his damage suit against George C. Fetterman and giving to the latter an option of forty-five days from the date of the agreement to purchase the Stevens Dwellings on the terms therein specified, and on the part of said Fetterman to convey to plaintiff the Pasadena lots, expressly states: "Unless the said G. C. Fetterman exercises the said option within the period of forty-five days from the date hereof, said option shall be null and void and *the said G. C. Fetterman shall have no interest, right, title or estate whatsoever in or to the last described real property or any part thereof.*" It will further be noted that in his escrow instructions (also in part quoted above) accompanying said agreement, and addressed to the title insurance company, holder of the escrow, it is stated that George C. Fetterman, in case he did not within the time specified comply with the terms of said agreement as to repayments to be made and other cognate conditions to be performed, he would not call for a return of his deed conveying the Pasadena lots to plaintiff. Thus it is plainly apparent, from the face of the last agreement and the escrow instructions themselves, that the intention of the parties was that either the consummation of said agreement by a compliance with its terms by Fetterman or the latter's failure to comply therewith within the period of time named therein, would close or terminate the deal respecting the Stevens Dwellings, and that the dis-

missal of the damage suit referred to would be all that would be left to be done by plaintiff in the performance of the consideration for the deed of said Fetterman transferring to the former the latter's Pasadena lots. The terms of said agreement and the escrow instructions relative to the same are in clear, unambiguous, and unqualified language. Construction is not necessary to get their meaning and intent. They were self-operating, the holder of the escrow having no discretion as to the matter of the delivery of the Fetterman deed to plaintiff after the lapse of the time within which such delivery should be made in case the grantor therein failed within said time to meet the conditions without the performance of which he would not be entitled to a conveyance of the Stevens Dwellings. But defendants stress as of singular significance, in support of their contention that the Keeney transaction was related to and the final act in the consummation of the agreement of August 22, 1923, the following, which is the concluding language of the written notice served by plaintiff upon defendants, and dated October 8, 1923, demanding of them, on penalty of an action for damages for the breach thereof in case they failed to heed such notice, that they perform the terms of said agreement on or before October 13, 1923, to wit:

"He (plaintiff) notifies you, however, that he will hold you at all times bound by the terms of said agreement and he will at all times hold and consider the said agreement binding and in full force and effect."

The above language cannot reasonably be viewed as meaning anything more than that the plaintiff would insist upon the enforcement of the agreement to which it related. Manifestly, the moment said contract was carried out or terminated in any way, it became *functus officio*. Its existence thereafter could not be to any purpose, and it would, therefore, be absurd to say that the effect of the above language of the notice demanding of defendants compliance with the terms of said contract would be to keep it alive after that time. This view of the meaning, the effect and the scope of said language coincides with the court's findings which necessarily involve a construction thereof at variance with the effect which defendants would impart to it. And this brings us to the point where it should be considered whether the findings are afforded sufficient support by the proofs.

[5]  The findings are, of course, to be interpreted to mean that, according to the judgment of the trial court, to which properly the determination of the questions of fact was submitted, the defendants failed to sustain the burden cast upon them of countervailing or overcoming the presumption that the Keeney deed is what upon its face it purports to be, to wit: An absolute conveyance of the land therein described to plaintiff. The duty of this court is limited to the determination of whether there is sufficient evidentiary support to the findings, although, in asking us to hold that the findings are not so supported the defendants necessarily assume that this court can say, as a matter of law, that the evidence introduced by them to support their attack upon the presumption above referred to was of so satisfactory and convincing a character as to have justly persuaded the court below to the conclusion that thus the force of said presumption was entirely destroyed, and that, per consequence, the evidence preponderated in favor of their position that the Keeney deed to plaintiff was intended by the parties to operate as a mortgage to secure a debt owing from defendants to plaintiff. The record here accords no ground for such a course.

The several transactions involved were, on behalf of defendants, conducted entirely by George C. Fetterman. The defendant, Rosa Fetterman, was not called as a witness, doubtless because she took no direct or active part in said transactions. Principally upon George C. Fetterman's version of the transactions as given at the trial and the several written agreements and escrow instructions the defendants relied on the court below to sustain their special defense or the allegations of their cross-complaint and upon which they rely here in support of their contention that the findings are not well grounded, evidentially. It is not necessary to enter herein upon a minute examination or to present a detailed statement of the facts to which said defendant testified. It will be enough for the purposes of the present consideration to state that he testified that there never was at any time, from the date of the agreement beween plaintiff and defendant G. C. Fetterman of date October 30, 1923, and the time when Keeney deeded his property to plaintiff, a termination by any means of the agreement between plaintiff and defendants for the acquisition of the Stevens Dwell-

ings by defendants; that, prior to the execution and delivery of the Keeney deed to plaintiff, the latter was informed by George C. Fetterman that he (said Fetterman) had arranged to purchase the Keeney property, and that upon such purchase said property would be conveyed to plaintiff as part of the consideration for the conveyance by plaintiff to defendants of the Stevens Dwellings; that subsequently the Fettermans did purchase the Keeney property, but caused the same to be directly conveyed to plaintiff in pursuance of the agreement of option of January 9, 1924. Said Fetterman further testified that the Pasadena lots of Rosa Fetterman were conveyed to plaintiff as part of the consideration for the conveyance to them of the Stevens Dwellings and not as a consideration for a compromise of the damage suit by plaintiff against George C. Fetterman. In addition to said Fetterman's testimony, all the agreements and escrow instructions, of which there were many, and of which a number were modifications of like instructions previously deposited with the holder of the escrow by both plaintiff and defendants, such modifications being made to conform to modifications of the several written agreements, were introduced in evidence by the defendants upon the theory, of course, that they would sustain the case of the latter. A number of witnesses testified for defendants to certain matters pertaining to some of the transactions.

The plaintiff's testimony upon all the important facts involved a flat contradiction of George C. Fetterman's testimony (except certain admissions made by said Fetterman) as well as much of that given by the other witnesses of defendants, and his testimony as to certain facts was corroborated by the testimony of his attorney, who, it appears, was conversant with all the several transactions, he having acted as the legal adviser of the plaintiff. His testimony derived further corroboration from the several written agreements as they were impliedly construed, and reasonably so, apparently, by the court in its findings, and also certain circumstances of potent significance. We have already seen that there is nothing on the face of the agreement of January 9, 1924, or the escrow instructions deposited by defendant therewith from which, when considered alone, or by themselves, the inference follows that, after the expiration of the time within which said agreement might be performed, any

further negotiations for the acquisition by defendants, or either of them, of the Stevens Dwellings, were still to exist or to continue. We have also seen that plaintiff testified that the negotiations for the exchange of the Stevens Dwellings for the Keeney property on the terms and conditions above specified were inaugurated by George C. Fetterman without his (plaintiff's) authority and entirely independent of any consideration of any of the agreements or transactions previously made and had by and between plaintiff and the defendants relative to the plaintiff's property. Stevens positively testified that the defendants never owed him any money on account of the Keeney deal, or on account of any of the transactions mentioned herein, except what he claimed for the damage suffered by him from the breach by George C. Fetterman of the agreement of August 22, 1923. Besides that testimony is that of both Keeney and George C. Fetterman that the latter did not pay to the former as much as a single cent as a consideration for the transfer of the Keeney property to himself or to plaintiff. Moreover, Keeney testified (and in this he was corroborated by George C. Fetterman) that it was understood and agreed by and between himself, said Fetterman and plaintiff that, for a few months after the making of the conveyance of his property either to the Fettermans or plaintiff, he (Keeney) was to and in fact did continue to occupy the premises and pay the rent to plaintiff, the defendants Fetterman or either of them never at any time exacting or asking for the payment of said rent to them. This is how George C. Fetterman testified on that subject: "Mr. Keeney did not at any time pay me any rent for the use and occupation of that property (Keeney property), nor did anyone else. I did not claim or demand the right of possession of the property from Mr. Stevens, never made no demand on him." He further testified that he never at any time paid any taxes on the Keeney property either before or after Keeney conveyed it to plaintiff, nor, he continued, did he offer to pay the taxes assessed thereon; that he never paid any interest on the $10,000 mortgage on said property subject to which plaintiff took the conveyance from Keeney, although, he stated, he knew that said mortgage was a subsisting lien upon the Keeney property when he caused the same to be conveyed to plaintiff. Keeney testified that the bank holding the $10,000

mortgage notified him, after he had conveyed to plaintiff, that there was interest due on the note which said mortgage was given to secure; that he did not call the attention of George C. Fetterman to said notice and demand for the payment of interest, but did notify plaintiff thereof; that he (Keeney) had paid the taxes on the property and that he looked to plaintiff for reimbursement for the expenditures so made and made no demand upon the Fettermans or either of them for such reimbursement. He stated that he "had no transactions with Mrs. Fetterman" and received no consideration from her or from her husband for the property transferred by him to plaintiff. A further review of the testimony is not required. Enough thereof has been herein considered to confirm the conclusion that the findings are strongly fortified. There is no intrinsic weakness in the testimony of the plaintiff. It seems to be positive, consistent, and probable. Indeed, the circumstances surrounding the Keeney deal to which we have above adverted vouchsafe the verity of plaintiff's testimony. On the other hand, the testimony of George C. Fetterman does not appeal to us as being reasonable or probable and it is to be presumed the trial court so viewed it. If the transactions leading to and embracing the act of the conveyance of the Keeney property to plaintiff were intended to have the effect claimed for them by defendants, it would seem to be highly probable that some of the several writings between the parties would have so indicated in language as to the meaning or real purport of which there could be no serious doubt or misapprehension. This would, it seems natural to suppose, be the course the most likely to be pursued in cases in which there were at stake property interests of the magnitude of those involved herein and of a corresponding degree of importance to both parties, particularly where, as here, the party claiming from the transaction a benefit not expressly or even impliedly given in the writing covering the terms of such transaction is a real estate broker of the usual business acumen of the average person engaged in the prosecution of that profession. But further comment on the evidentiary phases of the case need not be pursued. It is enough to say generally, as before we have declared, that all the findings vital to the judgment are afforded sufficient support by the evidence.

[6] The claim that there is no evidence which lends support to the finding that the Keeney deal was conducted by George C. Fetterman in the capacity of a real estate broker, and that he had no further or different connection with that transaction, is not well founded, although it is not of material importance here. Said Fetterman testified that his business, at the times of the initiation and the consummation of the Keeney transaction, was that of a real estate broker. The evidence shows it was through him that the plaintiff and the Keeneys were brought together on the Keeney transaction. These facts, together with the evidence from which the court educed its finding that said transaction involved a transfer of the Keeney property, not to George C. Fetterman, but directly to plaintiff, upon a consideration moving wholly from the latter, are sufficient to support the finding as to the capacity in which Fetterman acted in that transaction. But, with the well-supported finding that the Keeney property was conveyed directly to plaintiff, and the finding that the Fettermans were not at the time of that transaction indebted to plaintiff in any sum whatsoever, and that the Keeney deed was exactly what it purported to be, it would not make the slightest difference, so far as the decision here is concerned, whether Fetterman acted as a real estate broker in the Keeney transaction or performed the service incident to bringing the principal parties together in that deal merely as an act of friendship and without compensation or expectation of receiving any.

The judgment is affirmed.

Plummer, J., and Finch, P. J., concurred.