[Civ. No. 17073. Second Dist., Div. Three. Mar. 10, 1950.]

VITO SPATARO et al., Appellants, v. DOMENICO DOMENICO et al., Defendants; MADALENA DOMENICO et al., Respondents.

Elbert E. Hensley for Appellants.

Daniel W. Gage for Respondents.

VALLÉE, J.—Appeal by plaintiffs from a judgment for defendants in an action to have a grant deed, absolute in form, declared a mortgage, for an accounting, for a reconveyance of the properties to plaintiffs, and to quiet their title thereto.

The complaint, filed May 15, 1947, alleged that on March 15, 1938, plaintiffs, as security for a loan of $500, executed a grant deed to Domenico Domenico and Madalena Domenico, husband and wife, as joint tenants, covering two parcels of real property in Los Angeles County; that the deed, though absolute in form, was intended and agreed by the parties to be a mortgage on the property as security for the payment of the $500 loan; that the reasonable market value of the property at the time the deed was executed was $19,000; and that the loan had been fully paid. Defendants denied these allegations except the execution of the deed, and pleaded laches, estoppel, statute of frauds, and that the deed had been executed for a valuable consideration and not given as security for any debt or obligation.

The court found that on March 15, 1938, plaintiffs executed the grant deed for a valuable consideration; a good and sufficient consideration was paid by the grantees; the deed was intended as an absolute conveyance and not as a mortgage; plaintiffs were guilty of laches. Judgment was for defendants, from which plaintiffs appeal.

In determining whether a deed, absolute on its face,

is a mortgage, the intention of the parties is controlling, and in the absence of any writing this intention is manifested by, and inferred from, all of the facts and circumstances of the transaction under which the deed was executed, taken in connection with the conduct of the parties after its execution. (*Morris* v. *Rickmeyer,* 28 Cal.App.2d 253, 257 [82 P.2d 472]; 17 Cal.Jur. § 45, p. 744.) Whether a deed absolute is in fact a mortgage is a mixed question of law and fact. (*Gronenschild* v. *Ritzenthaler,* 81 Cal.App.2d 138, 144 [183 P.2d 720].)

The test by which to determine whether the instrument is a mortgage is—was there a subsisting, continuing debt and a continuation of the relation of debtor and creditor? The fact is not only a circumstance tending to show that the conveyance is a mortgage, but is indispensable to the existence of a mortgage; if there is no indebtedness for which the conveyance is security, there can be no mortgage. (17 Cal.Jur. § 83, p. 783.) Ordinarily, there must be an agreement, express or implied, on the part of a mortgagor to pay the mortgagee a sum of money. Where there is no promise to pay, the deed will not be construed to be a mortgage. (*Goodfellow* v. *Goodfellow,* 219 Cal. 548, 554 [27 P.2d 898]; *Davis* v. *Stewart,* 31 Cal.App.2d 574, 577 [88 P.2d 734]; 17 Cal.Jur. § 84, p. 784.)

The presumption is that a deed is what it purports to be and one who seeks to overcome such presumption has the burden of producing clear and convincing proof. (*Beeler* v. *American Trust Co.,* 24 Cal.2d 1, 7 [147 P.2d 583].) Such evidence must be " 'clear, convincing, and conclusive—something more than that modicum of evidence which appellate courts sometimes hold sufficient to warrant a finding where the matter is not so serious as the overthrow of a clearly express deed, solemnly executed and delivered.' " (*Stevens* v. *Fetterman,* 76 Cal.App. 741, 753 [246 P. 102].) Whether the evidence offered to change the ostensible character of an instrument is clear and convincing is a question for the trial court and its determination in favor of either party upon conflicting or contradictory evidence is not open to review on appeal. (*Beeler* v. *American Trust Co.,* 24 Cal.2d 1, 7 [147 P.2d 583]; *Baines* v. *Zuieback,* 84 Cal.App.2d 483, 488 [191 P.2d 67].)

The facts stated in the light most favorable to respondents are these:

The real property involved was, prior to March 15, 1938, owned by plaintiffs for about 40 years and consists of two

parcels, noncontiguous, but located within close proximity to each other. In 1936 and up to March 15, 1938, plaintiffs were in serious financial straits. On June 29, 1935, the properties had been sold for delinquent taxes. They were encumbered with a mortgage and plaintiffs were delinquent in their payments thereon. In the early part of 1936, plaintiff, Vito Spataro, approached his nephew, Peter Principi, about renting a grocery store on one of the parcels of property, informing Peter he was afraid he might lose the properties, and needed the rental to meet payments due the bank. The grocery store which Vito sought to rent was in an extremely run-down condition and Peter was hesitant about renting it. Thereafter, defendant, Mrs. Domenico, Peter's mother-in-law, was approached by both Vito and Peter respecting the advancement of money for the necessary repair work and, subsequently, she advanced approximately $1,000 therefor with the understanding that it was to be repaid by plaintiffs each month at the rate of $17.50, being one-half of the $35 a month plaintiffs were to collect from Peter. In addition, Mrs. Domenico advanced $300 to plaintiffs to cover certain delinquent mortgage payments and taxes.

Mrs. Domenico testified that she spoke to Vito regarding the money he owed her and "all the time he said, 'Can't pay.' . . . I say, 'What I going to do? Am I going to lose this money?' He say, 'When I work I pay you.' " She testified that she was never repaid any part of the $1,000 or $300, although she asked Vito for it many times. "Sometime" in 1937, Vito again approached Peter about borrowing money to meet part of the mortgage so the bank would renew the loan. Peter was unable to loan plaintiffs any money. Vito then told Peter, " 'I am going to burn up that place down on Marengo so the bank won't get it.' He said, 'The only way they are going to get it is burned down at ashes. That is the only way they are going to get it.' " The day following this conversation, Mrs. Spataro came to the home of Peter and his wife and told them her husband had burned the Marengo Street property and was in jail. Subsequently, the loss was settled by the insurance company for $835, which money was paid to the bank which held it for the purpose of restoring the premises. The mortgage held by the bank matured on February 1, 1938. On March 15, 1938, $4,465.24 was due on the mortgage. Plaintiffs were unable to meet the bank's demands.

On March 14, 1938, Vito informed defendants he was losing

the properties and suggested that Mrs. Domenico take over in order not to lose what she had already advanced. Mrs. Domenico at first did not think the properties were worth the amount of the mortgage remaining unpaid, but Vito stated, " 'You have put out so much money to these places . . . I rather see you take it in order not to lose it to the bank . . . I owe you $1300.' He says, 'Tomorrow,' he says, 'we meet at the bank.' " The following day, March 15, 1938, Vito, Mrs. Spataro, Peter, Mrs. Principi, and Mr. and Mrs. Domenico went to the bank. They were informed that the bank, before renewing the loan, wanted $1,500 (being approximately one-third of the mortgage remaining unpaid) and the property redeemed from delinquent taxes. Vito stated he could not meet these demands, that he owed Mrs. Domenico $1,300, and was turning the property over to her. Mrs. Domenico then assumed the mortgage. The bank accepted $500 cash from her in lieu of the $1,500 it was demanding, it being agreed that the balance of the $1,500 would be advanced by her within six months in restoring part of the property and that when this was done the $835 insurance money held by it would be credited to the loan. It is this $500 which plaintiffs claim as the loan for which the property was deeded to the Domenicos for security only. In addition, Mrs. Domenico paid the delinquent taxes, receiving redemption certificates therefor, and put up additional collateral demanded by the bank. Plaintiffs then executed the grant deed to the Domenicos and it was recorded the same day.

Thereafter, the plaintiffs continued in possession of one of the parcels. It is conceded they paid no rent although there is evidence that rent was demanded of them. While this fact was a circumstance to be considered by the trial court in determining the character of the deed, it was not conclusive when considered with the other facts and circumstances of the transaction. After execution of the deed, plaintiffs did not exercise any of the prerogatives usually exercised by owners, with the possible exception of small expenditures for materials used in minor repairs. The Domenicos, on the other hand, did so. They paid all taxes on the premises from 1938 on, and spent $3,700 repairing the premises. They rented the premises, collected all rentals from the tenants, with the exception of plaintiffs, and paid all utilities. There is testimony that plaintiffs paid the water bills on the residence they were occupying until 1947, when the bills were changed into Mrs. Domenico's name, but this is directly contradicted by testi-

mony that Marie Principi, on behalf of her mother, gave plaintiffs the money with which to pay these bills. No debtor-creditor relationship was shown to have existed between the parties after the execution of the deed.

Vito testified that the property was worth $22,000 in 1938. Mrs. Domenico placed the value at $3,500. The bank appraisals of the two parcels as of January 10, 1938, totaled $3,750. The 1938 tax bills on both parcels reflect a total of $2,000.

It is obvious that appellants' contention that the evidence is insufficient to support the findings that (a) a good and sufficient consideration was paid by the grantees, (b) the deed was intended as an absolute conveyance, and (c) appellants were guilty of laches, cannot be upheld. The consideration for the transaction was the extinguishment of the grantors' debt to the grantees and the assumption by the latter of the encumbrance and the delinquent taxes. That the relationship of debtor and creditor no longer existed between the parties subsequent to the execution of the deed is amply supported by the record. The total consideration paid by the grantees was $5,887.51, which included the preexisting $1,300 indebtedness extinguished by them, the $4,465.24 mortgage assumed by them, and $122.27 paid by them in redeeming the property from delinquent taxes. Disregarding the valuation placed upon the premises by appellants, in view of the conflict in the evidence, it is evident, contrary to appellants' claim, that there was no great disparity between the value of the property and the consideration paid. ▮ The fact that the grantors received no money at the time of the execution of the deed is not, of itself, controlling. This contention was made in *Merchants Holding Corp., Ltd.* v. *Grey,* 6 Cal.App.2d 682, 688 [45 P.2d 253], where the court said: ''Appellant . . . argues that as no money passed . . . there could not have been a sale. The Supreme Court has held that the term 'sale' does not necessarily mean a transfer for money only and that the word frequently has a broader meaning. (*W. F. Boardman Co.* v. *Petch,* 186 Cal. 476 [199 P. 1047] ; *Mansfield* v. *District etc. Assn.* 154 Cal. 145 [97 P. 150].) The agreement to assume and pay the debt of $20,000 as a consideration for the house is entirely consistent with the idea of a sale.'' During the nine-year period between the execution of the deed and the filing of the action plaintiffs made no claim to the property, made no effort to pay the taxes, made no demand for an accounting of the rentals, but all parties treated the conveyance as an absolute one.

Since the evidence fully justifies the conclusion that the deed was not a mortgage, no purpose would be served in discussing the several other contentions made by appellants. They are inconsequential and a ruling one way or another would in nowise affect the judgment on its merits.

Affirmed.

Shinn, P. J., and Wood, J., concurred.