EMMONS, et al. *v.* EMMONS, et al.

May 18, 1953

No. 38697 32 Adv. S. 2 64 So. 2d 753

*Grover C. Doggette,* for appellant.

596

*Collins & Collins,* for appellees.

ROBERDS, J.

This litigation involves the title to twenty acres of land located in Jones County, Mississippi, described as south half of the southwest quarter of the northeast quarter of Section 13, Township 9, North, Range 14, West. On February 23, 1949, Athor Emmons and wife, Mary, the appellants, executed a conveyance, in form an outright deed, to L. T. Emmons to said land. Appellants claim that this instrument was intended by all parties, and was accepted by the grantee therein, as security for the payment of $118 owing by appellants to L. T. Emmons; that he has offered, and stands ready, to pay the debt, and he prays that the deed be cancelled. Appellees, L. T. Emmons and Annette Frazier, thirteen year old niece of L. T. Emmons, appellees, say this was not a debt-security arrangement but, on the other hand, was an outright sale of the land by Athor to L. T. Emmons and that, in either event, Athor is entitled to no relief as against Annette because L. T. Emmons conveyed the land to her on October 6, 1951, and she was an innocent purchaser for value.

The chancellor found that Annette was not an innocent purchaser for value; that the transaction between Athor and L. T. Emmons was a debt-security arrangement and that L. T. had verbally agreed to reconvey the land to Athor upon his repayment of the debt, but that such oral agreement could not be enforced because of the statute of frauds. Section 264 (e), Miss. Code 1942.

He also found that there was no fraud in the procurement of this deed by the grantee. However, it is shown that the grantor never parted with the possession of the land conveyed thereby, in which case parol evidence is competent to show the conveyance to be a mortgage without showing fraud in its procurement. Section 272, Miss. Code 1942; Culp v. Wooten, 79 Miss. 503, 31 So. 1; Nix v. Nix, 210 Miss. 821, 50 So. 2d 396.

The testimony amply sustains the finding of the chancellor that Annette was not an innocent purchaser for value. It also fully sustains his finding that the transaction between Athor and his wife and L. T. was a debt-security arrangement. Had he found otherwise such finding would have been against the great weight of the evidence on this record. We will detail the testimony and circumstances sufficiently to demonstrate, in our opinion, that statement.

Athor and L. T. Emmons are brothers. Athor is illiterate, having reached only the third grade in school. L. T. is much better educated, having completed the twelfth grade in school, and being a student in college at the time of the trial.

On February 23, 1949, date of the deed in question, Athor owned the twenty acres of land in controversy. L. T. owned the twenty acres just north thereof. Athor was indebted to the Commercial National Bank & Trust Company of Laurel in the total sum of $118. The Bank had written Athor demanding payment of the debt. He could not pay. He consulted Robert Graves, a friend to both Athor and L. T. Graves interested himself in trying to help raise the money with which to pay the Bank

and thereby prevent foreclosure of the trust deed and loss by Athor of his twenty acres of land, being all the land he owned. There was a conference between Athor, Graves and L. T. The three went to the Bank and the Bank agreed to lend to L. T. $200, he to execute to the Bank a trust deed on both twenty-acre tracts, Robert Graves also signing the note. The instrument in question was procured from Athor and his wife to L. T., who did execute to the Bank a trust deed on both tracts. Athor's debt to the Bank was paid out of this $200 and L. T. applied the balance to his own use. Later L. T. paid the debt to the Bank. There is no dispute as to the foregoing facts. The only dispute is whether the instrument executed by Athor to L. T. was to be security to L. T. until he was paid the $118 or was an outright deed vesting in L. T. absolute title to the land. Five witnesses, who were mutual friends or kinsmen of Athor and L. T., testified to facts showing that the purported deed was intended and understood to be security for the debt. A number of these testified Athor had repaid to L. T. and L. T. had accepted a payment of $21 on the debt. The only person who testified the deed was not intended to be a mortgage and he had not been paid part of the debt was L. T. himself. His testimony is greatly weakened by the fact that after this transaction took place, he became angry and very much incensed at Athor. This is shown by letters he wrote Athor and by other undisputed facts. Also, he said that the methods adopted in procuring the $200 loan from the Bank was what Graves, the accommodation maker, wanted done. Graves, therefore, becomes a very important witness. He testified that after Athor and L. T. came to him "I went to the bank and made arrangements with Mr. White and then I called them up there. I went and asked about the arrangements, myself, personally." Asked what was the arrangement between Athor and L. T., he said "The agreement was that if I would come down here and get Mr. White to change the deed—note—from Athor to L. T. and

give him more time to pay the debt that any time Athor paid the debt he would turn the land back over to him and he said he wanted a little security for his money." "Who said that?" "L. T." Another strange thing about the position of L. T. Emmons is he testified that he was advancing this money to prevent Athor from losing his land, yet his claims and actions, if he prevails, would result in doing the very thing he said he intended to prevent.

There is no conclusive test to determine whether a deed absolute on its face is a mortgage. Each case must be decided upon its facts and all the surrounding circumstances. However, the following elements are important, and especially applicable to, the case at bar: the relation of the parties; the financial condition of the grantor; possession by grantor; the value of the property, and the conduct of the parties. 59 C. J. S. 68-73. As to the relation of the parties, it is undisputed the grantee was far superior in education and ability to the grantor. Athor had gotten to the third grade; was barely able to read; L. T. went through the twelfth grade and was attending college when he testified.

Athor had no money; he was about to lose his land by foreclosure; he had to arrange to pay the bank. He retained and exercised after the transaction the same control over the land as he did before the transaction took place.

Graves testified the land was worth $800. Others testified it was worth from $45 to $50 per acre. In other words, the undisputed testimony is the land was worth from $800 to $1,000. Appellees put on no testimony to contradict that. To put the stamp of approval on this transaction would be to approve payment of $118 for property worth from eight hundred to a thousand dollars. This should not be done if equity can establish a right and enforce a remedy to prevent it.

As to the conduct of the parties, it seems apparent that at its conception this was a good faith transaction be-

tween two brothers, but, as above stated, it is shown without dispute that thereafter L. T. became very angry and incensed at his brother because of family trouble between Delphia Frazier, sister of Athor and L. T. and mother of Annette, and her husband. A divorce proceeding was instituted between Delphia and her husband. L. T. was ardent in his support of Delphia. He conceived the idea that Athor was favorable to the husband, to whom the divorce was finally granted. It is inferable that he then determined to retain title to the land. At least, it was after this that he undertook to deed the land to Annette, the minor daughter of Delphia.

Thus, it is seen that the great preponderance of the testimony establishes the instrument in question as a mortgage, or security for a debt.

But the learned chancellor saw no available remedy because he concluded that L. T. had orally promised to reconvey the land upon payment of the debt and that he could take refuge behind the statute of frauds. The character of this transaction was fixed at its inception. 59 C. J. S. 69, Section 35. This was not a sale with oral obligation to resell and reconvey. The determining fact is that this was a mortgage. The method of bringing about an equitable result is collateral and incidental. ▆▆ ▆ In every case where a deed absolute on its face is held to be mere security there is either an express or implied promise to do whatever is necessary to reinvest title in grantor upon payment of the debt. An equity court has that power. The remedy is not to endeavor to require L. T. Emmons to reconvey and revest title to the land by execution of a deed. That could not be done. But equity has the power to cancel the deed to L. T. and the one to Annette upon payment to L. T. of the amount of the debt with interest. That is all that could be done if the deed were in form a mortgage or trust deed. The remedy would be cancellation—not attempted forced reconveyance. "Equity will not suffer a wrong without a remedy," with certain ex-

ceptions not applicable here. Griffith, Mississippi Chancery Practice, Second Edition 1950, Section 35.

Reversed and remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

*McGehee, C. J.* and *Kyle, Ethridge* and *Lotterhos, JJ.,* concur.