Manuel RIZO, Appellant,

v.

John E. MACBETH, Appellee.

No. 461.

Supreme Court of Alaska.

Jan. 21, 1965.

Hugh G. Wade, Wade & Conway and L. Eugene Williams, Anchorage, for appellant.

Francis J. Nosek, Jr., Anchorage, for appellee.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

NESBETT, Chief Justice.

The principal question raised by appellant is whether the evidence was sufficient to declare that a deed to real property, absolute on its face, was actually only intended to serve as a security instrument.

The record reveals that the case below turned principally on the court's estimate of the credibility of the parties, who were the main witnesses, because the testimony with respect to key issues was in irreconcilable conflict.

The dispute arose out of a business relationship between the parties which had its beginning shortly after their friendship was established in 1950 or 1951.

The appellee was 57 years of age at the time of trial. He had had an eighth grade education and was a veteran of World War II on a government disability pension of $66.15 per month since his discharge in 1946 because of wounds received in his right arm and leg. He also suffered from a heart condition, however, his total disability was rated at only approximately 30 per cent. His annual income as a laborer or truck driver since 1952 had never exceeded $2,300.00, and he had been unable to do much work since 1956. There was considerable testimony to the effect that appellee had been troubled for years with a drinking problem, and had been arrested for drunken driving and several times for drunkenness.

The appellant, in contrast, had been steadily employed by the Alaska Railroad since 1951. His salary was approximately $6,000 a year. He was also the owner of a commercial fishing site, but there is no testimony that he realized any income from it.

In 1951 appellee purchased a five acre homesite from the United States Bureau of Land Management. The property in dispute is a portion of this tract and is located on O'Malley Road, near Anchorage. The total cost of the tract to appellee was $175 and patent eventually issued to him from the United States in 1953.

Prior to the issuance of patent and in January of 1952 the parties entered into a written agreement providing that each would contribute to improving the tract of land and to obtaining a patent. In the instrument evidencing this agreement there is cited a loan in the amount of $400 from appellant to appellee. The testimony was that appellant changed his mind and took no part in improving the homesite. The testimony as to the loan was in conflict. Appellant states that the amount was $400 and appellee states that the loan was in the amount of $300.00, but that added to it was the sum of $100 which represented interest.

Appellee testified that on several occasions he offered to repay this loan but that on each occasion appellant stated that he did not need the money then. In late 1956 appellant became concerned about the loan and brought suit in the United States Commissioner's Court. No service was obtained and the suit was eventually dismissed for want of prosecution, but apparently both parties were not aware of this and believed at the time of trial of the instant action that appellant actually had obtained a judgment in his favor.

At a time when appellant was pressing appellee for repayment of the loan, the parties visited appellant's attorney where a deed to the property was prepared, signed by appellee and delivered to appellant along with appellee's patent. Appellant testified that the deed was intended as an absolute conveyance; that he gave appellee $300 cash

on the delivery of the deed and that additional consideration was cancellation of the following debts: $400 arising from the loan in 1952, an attorney's fee of $400 incurred when suit was brought in the United States Commissioner's Court, $144 interest on the loan, the sum of $180 for small loans made to appellee over a period of years.

Appellee denied that any cash consideration was paid at the time the deed was ex²ecuted and denied the validity of any of the other considerations testified to by appellant. Appellee insisted that the deed was security for repayment of the original debt of $400 which had been reduced to the sum of $380 by reason of one $20 payment.

Appellee had built a frame cabin and had lived on the tract for the four years prior to the conveyance. He cleared a portion of the land and built an access road. Appellant paid all taxes assessed against the land after execution of the deed. Appellee had sold a portion of the tract amounting to approximately one acre in 1954.

In 1961 appellant sued to eject appellee from the land. Over a year later appellee filed an amended answer and counterclaim seeking to have appellant's deed declared to be a mortgage. The court, sitting without a jury, found that appellee had become indebted to appellant in 1951 and 1952 in the approximate amount of $300.00; that after demand for payment by appellant in 1957, it was agreed between the parties that the then amount of the debt was $400.00; that being unable to borrow the money to pay the debt, appellee executed a warranty deed to the tract which deed appellee considered as security for the debt and that no cash was paid to appellee at the time the deed was executed. The court further found that appellee continued to reside on the land; that no rent was tendered or demanded and that

no demand to quit was given to appellee until November 10, 1961; that appellee offered to make partial payments on the $400 debt on different occasions after August 20, 1957, but that appellant did not accept them; that appellant had paid the taxes on the property but that appellee had told appellant that he would pay the taxes and to put it on the bill.

From these findings the trial court concluded:

(1) That appellee was indebted to the appellant in the sum of $400 plus interest, plus taxes paid by appellant with interest on the tax payments, plus his costs and attorney's fees.

(2) That the deed given by appellee to appellant was considered by appellee to be a security instrument rather than an absolute transfer of title. Appellee was given thirty days from the signing of the judgment in lieu of mortgage redemption rights, to pay the sums due; that if the sums were not paid within thirty days then appellee was to be evicted from the premises and the cloud of his claims considered removed from the title.

■■ The majority rule is that a deed absolute on its face may be declared to be a security agreement.[1] However, there is a presumption that an instrument is what it purports to be, and clear and convincing evidence is required to overcome this presumption.[2]

■■ To determine whether an instrument is a deed or a security instrument, the court must look to the intention of the parties at the time of execution.[3] In the absence of any writing the intention is to be determined from all of the facts and circumstances of the transaction in which the deed was executed, in connection with

1. First Nat. Bank v. Timmins, 4 Alaska 242, 246 (D.Alaska 1910); Lewis v. Wells, 85 F. 896, 899, 1 Alaska Fed. 542, 546 (D.Alaska 1898).

2. Coyle v. Davis, 116 U.S. 108, 112, 6 S.Ct. 314, 29 L.Ed. 583, 584 (1885);

Blue River Sawmills, Ltd. v. Gates, 225 Or. 439, 358 P.2d 239, 243 (1960).

3. Sargent v. Hamblin, 57 N.M. 559, 260 P.2d 919, 926 (1953).

the conduct of the parties after its execution.[4]

■ Some of the various circumstances that may be considered are: The adequacy or inadequacy of consideration as compared to the value of the property, which is often stated to be the single most important factor.[5] Retention or nonretention of possession.[6] The conduct of the parties before and after the execution of the instrument.[7] The financial condition of grantor at the time of execution of the instrument.[8] The overall relationship of the parties—financial, business, debtor-creditor, etc.[9] Whether the grantor or grantee paid the taxes.[10] The construction of improvements after the execution of the deed.[11] Whether or not revenue stamps were affixed to the instrument.[12] There are others. Generally it can be said that no one of the circumstances is necessarily controlling, but that all present are to be considered.[13]

In their briefs herein each party advances many of the foregoing factors as evidence in support of his cause. The evidence was highly conflicting. Each side, with some basis, contends that the testimony of the opposite party was impeached in various respects.

■ Under such circumstances we would ordinarily follow the majority rule and hold that the question of whether the evidence was clear and convincing was for the trial court to determine and was not open to review on appeal unless shown to be clearly erroneous.[14]

■ We are unable to do this because it is obvious that the trial court applied an erroneous conception of the law to the facts of the case. We refer to that portion of finding of fact No. 5 and the first sentence of conclusion of law No. 2 which state as a finding that only the defendant (appellee-grantor) considered the deed to be security for the money that he owed plaintiff (appellant-grantee). Based upon this finding of fact the court adopted conclusion of law No. 2 which provides that the deed shall be considered to be a mortgage. Judgment was entered accordingly.

■ The majority rule is that before a deed absolute on its face can be declared to be a security instrument the court must have found that it was the mutual intent of the parties that the instrument have that effect.[15]

4. Spataro v. Domenico, 96 Cal.App.2d 411, 216 P.2d 32, 33 (1950); Blue River Sawmills, Ltd. v. Gates, supra note 2, 358 P. 2d at 243.

5. Barber v. Barber, 117 Ind.App. 156, 70 N.E.2d 185, 187 (1946); Newsom v. Greer, 314 Ky. 347, 235 S.W.2d 782, 785 (1951); Biddle v. Biddle, 363 Pa. 426, 70 A.2d 281, 283 (1950).

6. Jensen v. Friedman, 79 Cal.App.2d 494, 179 P.2d 855, 863 (1947); Newsom v. Greer, supra note 5, 235 S.W.2d at 785; Sargent v. Hamblin, supra note 3, 260 P. 2d at 927.

7. Spataro v. Domenico, 96 Cal.App.2d 411, 216 P.2d 32, 33 (1950); Emmons v. Emmons, 217 Miss. 594, 64 So.2d 753, 755 (1953); Leathers v. Peterson, 195 Or. 62, 244 P.2d 619, 625 (1952).

8. McLendon v. Davis, 131 So.2d 765, 767 (Fla.Dist.Ct.App.1961); Boysun v. Boysun, 140 Mont. 85, 368 P.2d 439, 441 (1962).

9. McLendon v. Davis, supra note 8, 131 So. 2d at 767; Emmons v. Emmons, supra

note 7, 64 So.2d at 755; Leathers v. Peterson, supra note 7, 244 P.2d at 625.

10. Fox Bros. Hardware Co. v. Phillips, 210 Ark. 483, 196 S.W.2d 754, 756 (1946); Sargent v. Hamblin, 57 N.M. 559, 260 P.2d 919, 927 (1953); Blue River Sawmills, Ltd. v. Gates, 225 Or. 439, 358 P.2d 239, 253 (1960).

11. Newsom v. Greer, 314 Ky. 347, 235 S.W.2d 782, 787 (1951); Sargent v. Hamblin, supra note 10.

12. Umpqua Forest Indus. v. Neenah-Oregon Land Co., 188 Or. 605, 217 P. 2d 219, 235 (1950).

13. Blue River Sawmills, Ltd. v. Gates, supra note 10, 358 P.2d at 249.

14. Chirikoff Island Cattle Corp. v. Robinette, 372 P.2d 791, 792 (Alaska 1962); Spataro v. Domenico, 96 Cal.App.2d 411, 216 P.2d 32, 34 (1950).

15. Spataro v. Domenico, supra note 14, 216 P.2d at 33; Sargent v. Hamblin, 57 N.M. 559, 260 P.2d 919, 926 (1953).

Appellant alleges that error was committed when evidence of the value of the property in dispute, supplied by the records and testimony of a tax assessor, was admitted.

As is pointed out by appellant, there is a difference of opinion among the various jurisdictions [16] as to whether such evidence of value should be admitted. The testimony of the tax assessor was that the taxing district regularly assessed at 100 per cent of value based upon a record of comparable sales in the area within the preceding two years.

Appellant has not shown how or why this testimony was unreliable with respect to the value of the property or how its admission prejudiced his case in any particular. The basis employed in arriving at a valuation was sound. The evidence had probative value and should have been admitted. No error was committed.

The trial court, over objection, permitted counsel for appellee to question appellee in detail concerning his military record, the nature of his discharge, wounds received while in the service, the degree of disability thereby created, the amount of a government pension received by appellee and appellee's inability to obtain employment because of his wounds and disability. Admission of this testimony is assigned as error.

Appellant's first objection was overruled, apparently on the ground that appellee's physical ability to earn money was material to the determination of the issues. A second objection was overruled on the ground that the evidence was necessary to show the intent of the parties.

We hold that no error was committed. The financial condition of the grantor in a suit of this nature is a relevant factor to be considered.[17] So also

may his physical ability to earn be relevant and material.

Appellant's allegation of error committed in admitting certain exhibits is not briefed sufficiently to be readily understandable and will not be considered.

The findings of fact, conclusions of law and judgment are set aside and the case remanded for retrial.

---

16. See 5 Wigmore, Evidence § 1640 (3d ed. 1940) for a discussion of the subject and tabulations of the holding of the various jurisdictions.

17. Emmons v. Emmons, 217 Miss. 594, 64 So.2d 753, 755 (1953).