## DARRINGTON *v.* ROSE *et al.*

[90 South. 632.   No. 22298.]

1. TAXATION. *Notice by clerk need not state the exact date of filing of assessment rolls.*

Under section 4303, Code 1906 (section 6937, Hemingway's Code), which provides that, when the tax assessor returns and files the assessment rolls in the office of the clerk, he shall give notice thereof, as well as of the date of the meeting of the board to consider the same, by publication in some newspaper published in the county, etc., which shall be notice to the taxpayers of the county of the contents of such rolls so filed, and all taxpayers shall be held to have notice of the time of filing objections to such assessment rolls and of the time of the hearing of the same by the board. *Held,* it is not required that such notice so published by the assessor shall state the exact date of the filing of such rolls with the clerk; it being necessary to state only that such rolls are on file.

2. TAXATION. *Any person interested in the land is given a statutory right to redeem from tax sale.*

Under section 79 of the Constitution of 1890, which secures the right of redemption of lands from tax sale "in favor of owners and persons interested in such real estate," and section 4330, Code 1906 (section 6964, Hemingway's Code), which provides for the redemption of lands sold the state for taxes by "the owner of the land or any person interested," and section 4338, Code 1906 (section 6972, Hemingway's Code), which gives the right of redemption of lands from tax sales to individuals by "the owner of the land or any person for him," *held,* although there is some variation in the language used in said constitutional provision and statutes as to who is given the right to redeem, nevertheless, construed together, the right to redeem is as broad in one as in the other, and any owner of land, or person interested therein, is given the right to redeem.

3. TAXATION. *Redemption statutes are to be liberally construed in favor of redemption, and such right is not confined to the owner of the fee.*

The statutes allowing the land to be redeemed from tax sales are to be liberally construed in favor of the person seeking to redeem, and the right to redeem is not confined to the owner of the fee, but to any person who has such an interest in the land as entitles him to the rents and profits and income therefrom.

4. TAXATION. *Party owning one-half undivided interest, with right to rents and profits through agreement with cotenant, may redeem.*

   Where the person seeking to redeem was, at the time of the tax sale and at the time of the offer to redeem, claiming to be the owner of a one-half undivided interest in the land sought to be redeemed, and the right to receive during his lifetime, and was receiving, the entire rents and profits from the said land by virtue of an agreement with his cotenants, which claim of ownership and right to the rents and profits of said land was with the consent of the other parties in interest, inquiry will not be made as to whether such claim is valid or not but such person, under the Constitution and statutes referred to, has such ownership or interest in the land as entitles him to redeem.

APPEAL from chancery court of Yazoo county.

HON. V. J. STRICKER, Chancellor.

Bill by John Darrington against Joe Rose and others. From a final decree denying the prayer of plaintiff's bill, plaintiff appeals, and Jacob Rose and Milton Cannon prosecute cross-appeals. Affirmed on direct and on cross-appeal.

*E. L. Brown,* for appellant.

The notice complained of was sufficient. This is a vain point. The notice in each of the four insertions of the paper, except the second one, printed August 13th, is as follows: "Notice to taxpayers. Notice is hereby given, as required by section 4303 of Mississippi Code of 1906, that, as county assessors of Yazoo county, Mississippi, I have this·day filed with the clerk of the board of supervisors, of said county, the land and personal rolls of said county for the year 1915. The board of supervisors of said county will meet the first Monday in September, and sit for the week, or longer if necessary, for the purpose of equalizing assessments, and hear and determine objections to any assessment on said roll.

"Yours truly,<br>"LEE GIBBS, County Assessor."

"Aug. 2, 1915.

128 Miss.—2

The only complaint of this notice is that, in the publication of the notice in the issue of the 13th Aug. 2, 1915, is omitted, and county assessors, after the name of the assessor, is omitted.

The notice says that "as county assessor of Yazoo county, Mississippi, I have filed," etc.   It was surplusage to add "county assessors," in any one of the issues.   "I, as county assessor of Yazoo county, Mississippi," signed Lee Gibbs, sufficiently designates his official capacity.   This is certain.   *Gibbs* v. *Dortch,* 62 Miss. 671.

The complaint that he failed, in the one notice, to give the date of the filing of the roll, is without merit.   In the first place the statute does not require that date to be given, the date required being the meeting of the board of supervisors to equalize.   He need not have had "Aug. 2, 1915," in any one of the issues.   The real date of the notice was the date of each issue of the paper, four dates of notice.

IV.   The sale of one-half interest in south quarter of lot 8, Pugh's Square was invalidated by failure to file list. Section 4367, Code of 1906 (section 7006, Hemingway's Code), requires that, in the case of special sales for taxes, the list shall be immediately filed with the clerk.   In this case, it was filed eighteen days after the sale, and thereby the sale was avoided.   112 Miss. *Fairley* v. *Albritton,* 83 So. 801.

In that case, the list was filed thirty-four days after the sale, and the sale was held invalidated thereby, the court construing the word "immediately" to mean "as soon as practical, under the circumstances, after the sale, and not within a reasonable time, thereafter."

Sheriff Stubblefield testified he was busy, and hence the delay, but his Honor sustained objections to this conclusion, calling for what kept him busy and he could assign nothing, being able to point out only six processes served, in addition to the routine business.   He had his regular office force of two in the office, and they were the

ones who performed the duty of making out the list. There were eighty-two sales, and "as soon as practical under the circumstances, after the sale," was two to four days. There was shown no semblance of excuse for the delay of eighteen days.

It is respectfully submitted that the decree of the court below should be reversed.

*Campbell & Campbell,* for appellees and cross-appellants.

We state as a legal proposition that the appellee, Joe Rose, does not have to be the owner of the fee in said lot in order that he may be permitted to redeem, but he has the right to redeem if he had any right, ownership, or interest in the property that would suffer if he did not protect the same by redemption. 26 R. C. L., section 387; Redemption by Person Other than Owner, page 430.

A right of redemption given to the owner of land, is not confined to the owner of the fee, but is generally held that it comports with the words and spirit of the law, to consider any person who has any interest in lands sold for taxes as the owner thereof for the purpose of redemption. Any right which in law or equity amounts to an ownership in the land, any right of entry on it, to its possession or enjoyment, or any part of it, makes the person the owner so far as it is necessary to give the right to redeem. Thus it has been held that a woman may redeem land in which she has an inchoate right of dower. Citing *Dubois* v. *Hepburn,* 10 Pet. 1 O. U. S. (Leed) 325, and other cases there referred to.

We direct the court's attention to the text laid down in 37 Cyc., page 1383; *Karr* v. *Washburn,* 56 Wis. 303, 14 N. W. 189; *Bond* v. *Greer,* 56 Miss. 710; *Schlottman* v. *Hoffman,* 73 Miss. 188.

We come now to a discussion of whether or not the sales under which the defendants were deprived of their property were in fact valid. We submit that the sales were not

valid because the assessment under which they were made were void.

In the case of *Cameron* v. *Whittington,* 120 Miss. 595, the court in construing section 4303 of Code of 1906, which requires the assessor to publish notice for three weeks of the meeting of the board of supervisors to hear objections to the assessment roll is mandatory, and without a compliance with this section, a tax sale made thereunder is void. The court in the case now under discussion, cites the case of *Ponder* v. *Martin,* 80 So. (Miss.), which we ask the court to read.

In *Cameron* v. *Whittington, supra,* the court not only held that section 4303 of the Code of 1906, is mandatory, but, being a substitute for summons must be strictly followed and complied with. The assessor attempted to comply with this section. Let us see if he did. We will first copy that part of this section of the code bearing on the subject under discussion: "Assessor to give notice of return and filing of roll. When the assessor returns and files the assessment roll in the office of the clerk of the board of supervisors he shall give notice thereof, and the date of the meeting of the board to consider the same, by publication in some newspapers published in the county, or if none be published, by posting at the court house for the space of three weeks, etc."

What is it that the assessor is required to do? To give notice of the returning and filing of the assessment roll in the office of the clerk of the board of supervisors and the date of the meeting of the board to consider the same. How did the assessor give the notice required of him? By publishing same in a newspaper published in the county for the space of three weeks. The notices (in the instant case) which was published by the assessor are attached as exhibit Nos. 2, 3, 4, and 5 hereto. The notice says that "as assessor, I have this day filed with the clerk of the board of supervisors of said county." To what day does the mere statement in the notice, "I have this day," refer? No date of either the day, week, month or year is given.

What day then did the assessor turn in and file the assessment in the office of the clerk of the board?

There is nothing in the body of the notice to indicate what day the assessor filed his roll with the clerk. It may have been on July 1st, or August 1st, or any other day, yet, the statute is mandatory that the assessor publish notice when he files the assessment roll with the clerk.

Exhibit 2 is a copy of one of the notices which was published by the assessor. By reference to it the court will see that it bears no date. And none of the notices in the several exhibits bear the official signature of Lee Gibbs as assessor. We submit that there being no valid notice published on August 13th, there was not publication for three weeks as required by law. Section 1607, Code 1906, provides when publication is required to be made in a newspaper for three weeks it shall be sufficient to publish the same once each week for three weeks, etc., and we have seen that for at least one of the weeks there was no notice as required by law.

We therefore confidently submit that appellant Darrington should not be permitted to have his title confirmed to the northwest quarter of lot 8 and to the southwest quarter of lot 8 of Pugh's Square for the following reasons: 1. The tax sales through which he claims title were void because the assessor failed to give proper legal notice as to filing of his assessment roll. 2. The defendant Joe Rose, being *non compos,* is entitled to redeem the southwest quarter of lot 8 of Pugh's square because he is interested therein. 3. The appellant Darrington, through his failure to pay taxes after his alleged purchase of the southwest quarter of lot 8 was divested by the sale of one-half interest therein to C. M. Henry for taxes on June 3, 1918.

ANDERSON, J., delivered the opinion of the court.

Appellant, John Darrington, filed his bill in the chancery court of Yazoo county against appellees, Joe Rose,

Carrie Bassett, Jacob Rose, and Milton Cannon, for the purpose of having confirmed a tax title claimed by appellant to the northwest quarter of lot 8, Pugh's Square, and the southwest quarter of said lot 8, of said square, in Yazoo City. Appellee Jose Rose claimed to be the owner of the said southwest quarter, and the appellees Jacob Rose and Milton Cannon claimed to be the owners of the said northwest quarter. Appellant claims title to both lots by virtue of tax sale of April 2, 1917; the two-year period for the redemption of same having expired before the bill in this case was filed. There was a final decree denying the prayer of appellant's bill as to the southwest quarter of said lot, from which appellant appeals to this court, and granting the prayer of his bill as to the said northwest quarter, from which said appellees Jacob Rose and Milton Cannon prosecute a cross-appeal. The case was tried on bill, answer, record and agreed evidence, and oral testimony of the tax collector who made the tax sales in question, and there is no real dispute as to any material fact.

We will consider, first, the question involved in the appeal of the cross-appellants, Jacob Rose and Milton Cannon, who claim title to the northwest quarter of said lot, appellant's tax title to which was confirmed by the decree appealed from. Appellant's tax deed to this lot is assailed on one ground alone, and that is that the tax assessor failed to comply with the statute in publishing the notice to taxpayers required by section 4303, Code of 1906 (Hemingway's Code, section 6937), which provides in substance that, when the tax assessor returns and files the assessment rolls in the office of the clerk, he shall give notice thereof, as well as the date of the meeting of the board to consider the same, by publication in some newspaper published in the county, etc., which—"shall be notice to all persons of the fact, and of the contents of the roll or rolls so filed; and all persons shall be held to have notice of the time within which to file objections to assessments, and of the time when the board of supervisors will hear the same, and of its power to raise assessments thereat."

The alleged failure to comply with the statute consisted in this: That the notice as published failed to state the date of the filing of the rolls with the clerk; it did state, however, that the rolls were on file with the clerk in this language:

"I have this day filed with the clerk of the board of supervisors of said county the land and personal rolls of said county for the year 1915."

And down at the left-hand corner of this notice, as first published, was the date "August 2, 1915;" in the second publication there was no date in the place named, nor elsewhere in the notice; in the third publication the date "August 2, 1915," appeared down in the left-hand corner; and the same is true of the fourth publication of the notice. It is argued that each publication of this notice should have informed the taxpayers of the date of the filing of the assessment rolls, which was not done. The statute contains no such requirement. It does require that the notice shall recite that the assessment rolls have been filed with the clerk of the board of supervisors, but there is nothing in the statute requiring that the notice shall set out the date of their filing. The notice in question given by the tax assessor, published in four issues of the paper, from August 6th to August 27th, inclusive, plainly recited that the assessment rolls were at the time of each publication thereof on file with the clerk of the board of supervisors. This is all that was necessary. It was wholly immaterial to the taxpayers whether they were filed one day or three days or more before the first publication of the notice. We therefore conclude that the court below committed no error in confirming the tax title of the appellant, Darrington, as to the northwest quarter of said lot.

And the facts and circumstances attending the tax sale and purchase thereunder by appellant of the other lot, the said southwest quarter being exactly the same as those pertaining to the sale and purchase of said northwest quarter, the same result must follow, unless the appellee, Joe Rose, had such ownership or interest therein as entitled him to

redeem the same, as his next friend offered to do for him
in his answer filed in this cause; for so far as he is con-
cerned the time for redemption had not expired, because
he was at the time of said tax sale, and has been contin-
uously since, a *non compos mentis;* therefore under our
statute (section 4338, Code of 1906; Hemingway's Code,
section 6972) he would have two years after attaining san-
ity within which to redeem. The question, then, is whether
he had such an interest in the land as entitled him to re-
deem. Both of the lots in question were owned until his
death in 1912 by Wash Rose, the father of the appellees
Jacob Rose, Joe Rose, and Carrie Bassett, and the grand-
father of the appellee Milton Cannon, who left a will by
which, as the agreed facts show, he intended to devise to
appellees Jacob Rose and Milton Cannon the said north-
west quarter, and to the appellees Joe Rose and Carrie
Bassett said southwest quarter; but the language of the
will unexplained, as applied to the facts— the property
he owned on North street—resulted in both of the lots in
question being devised to appellees, Jacob Rose and Mil-
ton Cannon. However, in 1912, soon after the death of
said Wash Rose, the said beneficiaries under his will got
together, and to carry out his well-known intention they
agreed verbally that the appellees Jacob Rose and Milton
Cannon should take and own under the will said northwest
quarter, and appellees Joe Rose and Carrie Bassett should
take possession and own the said southwest quarter (there
being a residence on each of said lots), which was accord-
ingly done, and such possession and claim of ownership
have continued up to the present time. The agreed facts
show that thereupon the appellee Carrie Bassett verbally
turned over to appellee Joe Rose, on account of his afflic-
tion, the rents and use of said southwest quarter for his
support and maintenance during his lifetime, since which
time said appellee Joe Rose has received the entire rents
and income from said lot. Was this such an interest in
said lot as entitled said Joe Rose to redeem it from said
tax sale?

Section 79 of the Constitution secures the right of redemption from tax sales of lands for taxes *"in favor of owners and persons interested in such real estate."* (Italics ours.)    Section 4330, Code of 1906 (Hemingway's Code, section 6964), provides for the redemption of lands sold the state for taxes by "the owner *or any person interested."* (Italics ours.)    And section 4338, Code of 1906 (section 6972, Hemingway's Code), provides for the redemption of lands sold individuals for taxes by "the owner of the land *or any person for him."* (Italics ours.)    It will be noted that there is some variation in the language used in the constitutional provision and the statutes referred to as to who is entitled to redeem; but there is no difference in meaning—one is as broad as the other—and it is hard to conceive how broader language could have been used. Therefore by the plain language of the Constitution and the statutes of this state any owner or *person interested* in real estate has the right to redeem from a sale for its taxes.

It was held in *Bonds* v. *Greer,* 56 Miss. 710, that the statute secured to the owner or *other person interested* the right to redeem, and "if it be doubtful whether the right is secured to the owner, *or other person interested in the lands sold for taxes, to redeem them, the doubt should be resolved in favor of the right."* (Italics ours.)    We are referred to no other case in this state by counsel, and we know of none touching on this question; however, it appears that the authorities elsewhere are practically unanimous in holding that statutes allowing the right of redemption from tax sales are to be liberally and benignly construed in favor of the right to redeem.    It has been held that the right given to the owner to redeem is not confined to the owner of the fee, but any person who has *any interest* in the land may redeem; that any right which in law or equity amount to the ownership of land, any right of entry on it, *or to its possession or enjoyment, gives the owner thereof the right of redemption.*    Among the reasons given by some of the courts for such a liberal construction of statutes of this character is that the purchaser at a

tax sale suffers no loss; he buys with full knowledge that his title cannot be absolute until the time for redemption expires, and that, if his title is defeated by redemption, it reverts to the original owner; and if it is redeemed, he is fully reimbursed for his outlay, with interest. 26 R. C. L. 387, 430; *Du Bois* v. *Hepbourn,* 10 Pet. 1, 9 L. Ed. 325; 37 Cyc. 1383; *Kerr* v. *Washburn,* 56 Wis. 303, 14 N. W. 189. In *Du Bois* v. *Hepburn, supra,* the supreme court, in considering this question said that *"any person who has any interest in lands sold for taxes, is the owner thereof for the purposes of redemption."* (Italics ours.)

We are of the opinion that, by virtue of the will of the father of appellee Joe Rose, and the construction put upon it by the other devisees thereunder, whether they were authorized by law to so construe it or not, and by virtue of the fact that the appellee Carrie Bassett had turned over to the appellee, Joe Rose, for his life, the use and income of her one-half undivided interest of said lot, whether that agreement was binding on her or not, that under the law said appellee Joe Rose had such interest or title in the entire lot as gave him the right to redeem. The outside world is not concerned in whether the agreements referred to between appellees in reference to the ownership of these lots are binding upon them or not; they are certainly binding upon all others having no interest in the property. When one, claiming to be the owner of land sold for its taxes, offers to redeem, the officer before whom the redemption is sought to be made is not required to try the title of such alleged owner; nor will the court, in a proceeding in which is involved the right of the alleged owner to redeem, stop to see whether he has a good title as against the world. If at the time of the sale for taxes, and at the time he offers to redeem, he owns the land, or such an interest therein as gives him the right to the exclusive use of its fruits, he has the right to redeem, provided, of course, such right is not barred by limitation.

These views in no wise conflict with *Wilson* v. *Sykes,* 67 Miss. 617, 7 So. 492. That was a case where one tenant

in common, a minor, sought to redeem, not alone his un-divided interest in the land, but that of the other tenants, who were adults, and barred from redemption. The court held that the infant could only redeem his own interest. The case at bar is very different from that case. The same principle would have been involved in that case as here, if at the time of the tax sale, and at the time of the offer of the infant cotenant to redeem, the latter, by agreement of his cotenants, had been in possession of the entire land, with the right to the use of the rents and profits during his lifetime.

*Affirmed on direct and cross appeal.*