# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-CA-00750-COA

HL&C MARION, LLC                                                    APPELLANT

v.

DIMA HOMES, INC.                                                      APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 03/31/2020 |
| TRIAL JUDGE: | HON. DEBORAH J. GAMBRELL |
| COURT FROM WHICH APPEALED: | MARION COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | CHRISTOPHER M. HOWDESHELL |
| ATTORNEYS FOR APPELLEE: | MARK A. NELSON |
| | NED ANDREW NELSON |
| | SAMUEL DENON NEWMAN |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED - 11/02/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**LAWRENCE, J., FOR THE COURT:**

¶1.     This appeal stems from a 2016 tax sale in Marion County, Mississippi. The home on the real property that sold at the tax sale was constructed by DIMA Homes Inc. It was owned by Phillip Kennedy[1] and Anna Kennedy. DIMA Homes built the home after the Kennedys had signed a construction contract. However, the Kennedys did not pay DIMA Homes according to the contract. DIMA Homes filed suit, obtained a judgment, and enrolled that judgment. Several years later, the Kennedys did not pay the taxes on the property, which caused the 2016 tax sale to occur. ACC Tax Sales Properties LLC acquired the subject

_____

[1] Phillip Kennedy is now deceased.

property at the tax sale and subsequently conveyed the property to HL&C Marion LLC by quitclaim deed in 2018. In 2019, HL&C Marion filed a complaint to confirm and quiet the tax title against the Kennedys and DIMA Homes, among others. A few months later, DIMA Homes filed a motion to set aside the tax sale and dismiss the suit to confirm and quiet the tax title, arguing DIMA Homes was entitled to notice of the 2016 tax sale but did not receive it and therefore should be able to redeem the property. After a hearing, the chancery court granted DIMA Homes' motion to set aside the tax sale and dismissed HL&C Marion's complaint to confirm and quiet the tax title. HL&C Marion then filed a motion to alter or amend the order or, alternatively, for confirmation that the judgment was final and for a stay pending appeal. The court denied HL&C Marion's motion, and HL&C Marion appealed. After review, we affirm the chancery court's judgment.

## FACTS AND PROCEDURAL HISTORY

¶2. On January 31, 2007, the Kennedys contracted with DIMA Homes to build a new home on their property for $105,050. The home was constructed, and the Kennedys were enjoying the benefits of living in the home. As a result of not being paid according to the construction contract, on January 12, 2011, DIMA Homes sued the Kennedys in the Marion County Chancery Court for $70,069—the unpaid balance under the construction contract. On November 7, 2013, the chancery court entered a final judgment in DIMA Homes' favor for $70,069 plus attorney's fees of $23,354, for a total judgment in the amount of $94,423. The parties do not dispute that the judgment was duly recorded and operated as a lien against the subject property. *See* Miss. Code Ann. § 11-7-191 (Rev. 2019). The Kennedys failed to

2

pay the county ad valorem owed taxes for 2015. As a result, the property was sold for taxes on August 29, 2016, to ACC Tax Sale Properties. After expiration of the redemption period, the Marion County Chancery Court clerk conveyed the subject property to ACC Tax Sale Properties on October 22, 2018, by deed. DIMA was not notified of the tax sale or prior to the expiration of the redemption period. ACC Tax Sale Properties subsequently executed a quitclaim deed conveying the subject property to HL&C Marion, which was recorded on November 2, 2018, and re-recorded on November 27, 2018.

¶3.     On April 30, 2019, HL&C Marion filed its complaint to confirm and quiet the tax title against the Kennedys and DIMA Homes.[2] DIMA Homes filed its answer with defenses and counterclaim on June 13, 2019, denying that HL&C Marion was entitled to confirmation of the tax sale and claiming that the tax sale was void because DIMA Homes was a "beneficiary and holder of a valid vendors' lien" and was not notified of the tax sale.[3]

¶4.     On October 28, 2019, DIMA Homes filed a motion to set aside the tax sale and

---

[2] HL&C Marion also included as defendants "the U.S. Small Business Administration, Honorable Hal Kittrell, in his capacity as district attorney for Marion County, Mississippi, Honorable Jim Hood, in his capacity as attorney general for the State of Mississippi . . . ." The United States of America, the State of Mississippi, and Marion County, Mississippi, all filed answers asserting no interest in the subject property. DIMA Homes answered the amended complaint on August 29, 2019, and asserted the same answer and affirmative defenses as in the original answer. There were certain exceptions in the answers of the State of Mississippi, the United States of America, and Marion County, none of which are relevant to this appeal.

[3] On July 23, 2019, HL&C Marion filed a motion to amend the complaint to add Marion County, Mississippi, as a necessary party defendant. HL&C Marion filed its reply to the counterclaim on July 25, 2019, alleging that there was no requirement for the clerk to provide notice to the holder of a judgment lien. The court granted HL&C Marion's motion to amend on August 28, 2019, and HL&C Marion filed its amended complaint the same day.

dismiss the suit to confirm and quiet tax title, specifically arguing that as a judgment lienholder, DIMA Homes was entitled to notice of the tax sale, and as a result, DIMA Homes should be allowed "to pay the taxes, set aside the tax sale and subsequent conveyance" to HL&C Marion. In legal effect, without specifically using the exact words, DIMA Homes asked the court to extend the redemption period. On November 4, 2019, HL&C Marion filed its consolidated response in opposition to DIMA Homes' motion and a cross-motion for summary judgment to cancel the judgment lien and dismiss DIMA Homes as a necessary party. Further, HL&C Marion alleged that DIMA Homes was not entitled to notice of the tax sale because it did not hold an interest identified in Mississippi Code Annotated section 27-43-5 (Rev. 2017) requiring notice to certain entities.[4] Finally, HL&C Marion argued that DIMA Homes could not redeem the taxes pursuant to Mississippi Code Annotated section 27-45-3 (Rev. 2017) because the redemption period had expired at the time of their suit to quiet title.

¶5. On January 13, 2020, the chancery court held an evidentiary hearing on DIMA Homes' motion to set aside and dismiss. On March 31, 2020, the court entered an order sustaining DIMA Homes' motion, setting aside the tax sale, and dismissing HL&C Marion's

---

[4] Mississippi Code Annotated section 27-43-5 reads as follows:

It shall be the duty of the clerk of the chancery court to examine the record of deeds, mortgages and deeds of trust in his office to ascertain the names and addresses of all mortgagees, beneficiaries and holders of vendors liens of all lands sold for taxes . . . .

suit to confirm and quiet tax title.[5]  The chancellor found that DIMA Homes was "not

notified," and as a judgment creditor since 2013, by virtue of section 11-7-191,[6] DIMA

Homes had a priority lien on the subject property.  Therefore, the chancellor set aside the tax

sale and the quitclaim deed, effectively extending the redemption period to allow DIMA

Homes to protect its judgment lien.  In response, HL&C Marion filed a motion to alter or

amend the order or, alternatively, for confirmation that the judgment was final and for a stay

pending appeal.  Both parties filed additional pleadings for the chancellor's consideration in

support of their arguments.  On June 15, 2020, the court held a hearing on HL&C Marion's

motion to alter or amend the order.  On June 29, 2020, the chancery court entered an order

denying HL&C Marion's motion.  HL&C Marion filed a notice of appeal.

## STANDARD OF REVIEW

¶6.    A motion to dismiss is converted into a motion for summary judgment if the trial court

considers matters outside the pleadings when ruling on the motion.  *Richardson v. Sara Lee

Corp.*, 847 So. 2d 821, 823 (¶5) (Miss. 2003).  Here, it is uncontested that the chancery court

considered matters outside of the pleadings, thereby converting the motion to dismiss into

---

[5] The dissent mentions that the chancellor "obviously found" and "obviously relied" on section 27-43-5 in setting aside the tax sale.  That simply is not true.  That section is never mentioned by the chancellor.  However, the dissent may be right that this section only requires the chancery clerk to examine the "deeds, mortgages, and deeds of trust in his office."  An enrolled judgment would not be found in those records, so it would be futile to conduct a search for those records for an enrolled judgment.  The issue of whether section 27-43-5 requires notice to judgment creditors is not addressed in this opinion and was not included in the chancellor's ruling.

[6] Mississippi Code Annotated section 11-7-191 states that "a judgment so enrolled shall be a lien upon and bind all the property of the defendant within the county."

5

a motion for summary judgment. This Court reviews a trial court's grant or denial of summary judgment de novo. *Jarrett v. Dillard*, 167 So. 3d 1147, 1151 (¶4) (Miss. 2015).

**ANALYSIS**

¶7. On appeal, DIMA Homes alleges it should have received notice of the tax sale so that it could protect its legal interest in the subject property and redeem the property under Mississippi law. DIMA Homes claims the failure to provide it notice so that it could act justifies setting aside the tax sale. HL&C Marion admits that DIMA Homes had standing to redeem the property because of its judgment-creditor status but claims that DIMA Homes was not legally entitled to notice that would justify setting aside the tax sale.

¶8. In its motion to set aside the tax sale, DIMA Homes specifically requested that the court extend the statutory redemption period provided in Mississippi Code Annotated section 27-45-3 so that it could pay the taxes on the property. Section 27-45-3 reads, "The owner, or any persons for him with his consent, or **any person interested in the land** sold for taxes, may redeem the same, or any part of it . . . ." (Emphasis added). In *Perret v. Loflin*, 814 So. 2d 137, 140 (¶11) (Miss. 2002), the Mississippi Supreme Court held that judgment creditors such as DIMA Homes are within the class of people who may redeem a property sold for taxes under Mississippi Code Annotated section 27-45-3. In that case, the judgment creditor had obtained a default judgment in chancery court against the original owner of the property, and the chancery court found the judgment creditor's interest in the property was sufficient. *Id*. at 137 (¶1). The Mississippi Supreme Court agreed with the chancellor's reasoning, stating:

6

> Redemption would allow the taxes to be paid and restores the property to the record owner. The judgment creditor must still take action to attempt to satisfy the lien. We find that the chancery court was correct in finding that [the judgment creditor] was "a person interested in the land sold for taxes" within the meaning of [section] 27-45-3.

*Id*. at 140 (¶11).

¶9.	Further, in an opinion by then Judge Ishee[7] while on the Mississippi Court of Appeals, in *Marathon Asset Management LLC v. Otto*, 977 So. 2d 1241 (Miss. Ct. App. 2008), this Court approved an expansion of the redemption period for "owners in fee, or **any person who has an interest in the land**[.]" *Id.* at 1244 (¶8) (emphasis added). The *Marathon* case involved a corporation that purchased property at a tax sale, obtained a deed for the subject property, and transferred title to Marathon Asset Management LLC (Marathon) by quitclaim deed. *Id.* at 1243 (¶2). At that point the statutory redemption period began to run. *Id*. Roughly eighteen months later, a special commissioner conducted a foreclosure sale of the subject property, which was held by AmSouth Bank. *Id.* at (¶3). The Ottos were the highest bidders, but the deed was not conveyed to them until twelve days after the tax redemption period had expired due to separate court proceedings regarding the property. *Id*. AmSouth Bank later filed a motion to amend the final judgment in the Ottos' behalf and asked the chancery court to extend the redemption period so that the Ottos could redeem the subject property. *Id.* at (¶4). The chancellor approved the extension, and Marathon appealed. *Id.* at 1246 (¶15).

¶10.	On appeal, this Court held that the chancery court had authority to extend the

_____

[7] Judge Ishee is now a justice on the Mississippi Supreme Court.

7

redemption period. In doing so, this Court noted that the two-year redemption period was not "absolute." *Id.* at 1244 (¶8). Further, the opinion recognized the importance of allowing chancellors the opportunity to fashion an equitable remedy when necessary:

> The legislature may impose reasonable conditions on the right to redeem under the constitution, but the right cannot be defeated by the legislature neglecting or failing to provide a scheme by which it may be done. **The court will afford a remedy in case the legislature furnishes none,** and equity has jurisdiction of a suit to redeem independent of the legislature.

*Id.* at 1244 (¶8) (emphasis added) (quoting *Levy v. McCay*, 445 So. 2d 546, 547 (Miss. 1984)). This Court also recognized that the supreme court has instructed that the redemption-time statutes are to be "liberally construed." *Id.*; *see, e.g.*, *Perret*, 814 So. 2d at 140 (¶11); *James v. Tax Inv. Co.*, 206 Miss. 605, 618, 40 So. 2d 539, 543 (1949); *McLain v. Meletio*, 166 Miss. 1, 5, 147 So. 878, 879 (1933); *Darrington v. Rose*, 128 Miss. 16, 25, 90 So. 632, 634 (1922). "If redemption must be construed liberally in favor of the right to redeem, then this favors allowing redemption by the judgment creditor in this case." *Perret*, 814 So. 2d at 140. Further, this Court recognized that "there is no statute that explicitly prohibits the extension of the redemption period." *Marathon*, 977 So. 2d at 1245 (¶12).

¶11. When reading section 27-45-3 together with the holdings in *Perret* and *Marathon*, it is clear that Mississippi law affords DIMA Homes, as a legally enrolled judgment creditor, a lien interest in the subject property. As a result of that lien interest, section 27-45-3 and *Perret* allow DIMA Homes the opportunity to redeem the property sold for taxes in an effort to protect its valid judgment. Finally, as a judgment creditor, the holding in *Marathon* allows DIMA Homes the opportunity to ask for an extension of the redemption period when the

failure of notice would cause an inequitable result. The unique and factually specific problem of this case poses an interesting question: what remedy, if any, should the law provide when (1) a chancery clerk knows of the judgment creditor's interest, (2) is presumed to know the law allowing judgment creditors the opportunity to redeem tax sale properties in which they have a legal interest,[8] and (3) fails to provide notice?

¶12. In *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950), the United States Supreme Court held that "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is **notice reasonably calculated**, under all the circumstances, to apprise interested parties of the pendency of the action and **afford them an opportunity to present their objections**." *Id*. at 314 (emphasis added) (citations omitted). The Supreme Court also recognized the competing interest to strike a balance between the "interest of the State" and "the individual interest sought to be protected by the Fourteenth Amendment." *Id*. Extending that due process analysis in *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 799 (1983), "the United States Supreme Court held: '**Notice by mail** or other means as certain to ensure actual notice is a **minimum constitutional precondition** to a proceeding **which will adversely affect the liberty or property interests of any party**, . . . if its name and address are **reasonably ascertainable**.'" *City of Jackson v. Rebuild Am. Inc.*, 77 So. 3d 1105, 1119 (¶41) (Miss. Ct.

---

[8] It is a longstanding principle that "ignorance of the law excuses no one, or that **every person is charged with knowledge of the law**." *Hoskins v. Howard*, 214 Miss. 481, 497, 59 So. 2d 263, 269 (1952) (emphasis added); *see also Green Hills Dev. Co. v. Sec'y of State*, 275 So. 3d 1077, 1086 (¶28) (Miss. 2019).

App. 2011) (quoting *Mennonite*, 462 U.S. at 799).[9]

¶13.  "[A] mortgagee possesses a **substantial property interest** that is significantly affected by a tax sale." *Mennonite*, 462 U.S. at 798 (emphasis added).  Here, there is little doubt that DIMA Homes also had a "substantial property interest" and had a legal right to act by redeeming the property.  DIMA Homes only needed notice.  The chancery clerk failed to provide that notice.  This case is not one where we need to discern whether court officials should be required to search government-maintained databases to ensure whether citizens' "interests" are protected before a tax sale is finalized.  In this case, the clerk knew of the judgment lien yet did nothing.  It is for a future court in a future case to decide if its chancery clerk must walk across the hall to check judgment rolls.  This case would fail constitutional muster under *Mullane* and *Mennonite* if we were to hold that despite knowing of a legitimate judgment lien, the clerk official had no duty to provide "minimum constitutional" notice. *See Mennonite*, 462 U.S. at 799.

¶14.  In *Aarco Oil & Gas Co. v. EOG Resources Inc.*, 20 So. 3d 662, 669 (¶24) (Miss. 2009), the Mississippi Supreme Court held the owners of severed mineral interests in that case were not entitled to notice because their whereabouts were not "readily ascertainable." Even so, the supreme court recognized that "whether a particular method of notice is reasonable depends on the particular circumstances." *Id*. (quoting *Tulsa Prof'l Collection*

---

[9] The dissent alleges that there was no statute that required the chancery clerk to provide notice to a properly enrolled judgment creditor.  However, the United States Constitution and the Mississippi Constitution apply to everyone.  The due process requirements of those constitutions require "minimum constitutional" notice.  That notice would apply whether a Mississippi statute requires it or not. *See Mennonite*, 462 U.S. at 799.

*Servs. Inc. v. Pope*, 485 U.S. 478, 484 (1988)). Contrary to the individuals with mineral interests in *Aarco*, the whereabouts of DIMA Homes were indeed "readily ascertainable."[10] As previously stated, the exact amount of DIMA Homes' judgment ($94,423) as enrolled pursuant to section 11-7-191, is handwritten on the Marion County Affidavit of Tax Sale. Apparently, the clerk or someone in that office knew of DIMA Homes' enrolled judgment. Given that information, it is inconceivable and unconstitutional to think a clerk at minimum would not mail notice to DIMA Homes when he was aware of that enrolled judgment. Yet no notice was given. Had the clerk provided notice to DIMA Homes, it almost certainly would have protected its judgment (money it was legally owed) and bid on the property at the tax sale or redeemed the property after the tax sale. DIMA Homes never got that chance because it never received notice. The cost of mail would have protected a legitimate business in our State from losing the legitimate interest it had in a legitimate judgment.

¶15. It is also important to note that HL&C Marion recognized DIMA Homes' legal standing as a judgment creditor with the right to redeem the property by paying the taxes owed. But HL&C Marion argues against setting the tax sale aside for lack of notice to DIMA Homes. Essentially, HL&C Marion argues that DIMA Homes had a legal complaint but no legal remedy. It would be inconsistent with equity and the intent of our tax sale

---

[10] In *Aarco*, 20 So. 3d at 663 (¶1), the supreme court was considering what notice a chancery court should provide concerning mineral rights of property. In this case, it is a determination for a judgment creditor. Dereigning a title for mineral rights could certainly be considered an "extraordinary effort" as opposed to checking the status of a judgment creditor, which would involve going to the circuit clerk's office and checking the name in the judgment roll index, which is usually computerized. Again, that issue is not before this Court in this case. Here, the clerk knew of DIMA Homes' enrolled judgment.

statutes to hold that DIMA Homes, which had a statutory lien on the property as a judgment creditor and had a right to redeem, did not have a remedy when it could not execute on that right to redeem because it received no notice. Equity is not that harsh. Instead, equity seeks to do that which is right. Here, the chancellor fashioned an equitable remedy for DIMA Homes by setting aside the tax sale and extending DIMA Homes' redemption period.[11]

¶16. In *White v. White*, this Court reversed a chancellor's dismissal based on the Statute of Frauds and found that the remedy of a constructive trust should have been litigated. *White v. White*, No. 2018-CA-00544-COA, 2019 WL 7876654, at *5 (¶33) (Miss. Ct. App. May 21, 2019), *cert. dismissed*, 291 So. 3d 1111 (Miss. 2020). In doing so, this Court recognized two longstanding principles:

> First, "if there is no adequate remedy at law, equity will step in." *Tolbert v. Southgate Timber Co.*, 943 So. 2d 90, 99 (¶31) (Miss. Ct. App. 2006). Second, "[e]quity will not suffer a wrong without a remedy . . . ." *Emmons*

---

[11] The dissent maintains there is "no place for an equitable remedy in this case" because DIMA Homes "apparently did nothing" to protect its lien. DIMA Homes spent its own money to build a home for another person pursuant to a contract. That person did not pay DIMA Homes pursuant to the contract. DIMA Homes had to file a lawsuit and obtain a judgment against that person. DIMA Homes enrolled that judgment and had a legal lien on the property of that individual. Through no fault of DIMA Homes, that individual then failed to pay his property taxes. The clerk knew about DIMA Homes' enrolled judgment but did not provide notice to it so that DIMA Homes could exercise its statutory right to redeem the property. HL&C Marion paid nothing to build the property yet got the property for taxes owed (mere pennies on the dollar of what it cost to build). *Marathon* allows a chancellor to expand the redemption period to ensure an equitable result when the law provides no remedy. *See Marathon*, 977 So. 2d at 1244 (¶8). This case embodies the principle that "[e]quity will not suffer a wrong without a remedy . . . ." *Emmons v. Emmons*, 217 Miss. 594, 600, 64 So. 2d 753, 755 (1953). Further, it gives new and modern meaning to the principle announced in England in 1584, long before this country was even founded: "The true reason of the remedy; and then the office of all the Judges is always to make such construction as shall **suppress the mischief, and advance the remedy** . . . ." *Heydon's Case* (1584) 76 Eng. Rep. 637, 638; 3 Co. Rep. 7a, 7b (footnote omitted) (emphasis added).

*v. Emmons*, 217 Miss. 594, 600, 64 So. 2d 753, 755 (1953). For this reason we reverse the chancery court's dismissal of the request for a constructive trust, while recognizing it may ultimately conclude the proof does not warrant such a remedy.

*Id*. at (¶33) (emphasis added).

¶17. Those two longstanding principles were properly applied in this case. This Court, as so many courts before us, routinely strives to ensure an equitable result when the law leaves it wanting. Here, the chancellor found that DIMA Homes was a valid judgment creditor and that section 11-7-191 gave DIMA Homes a lien on the subject property. As a valid judgment creditor with an enrolled judgment who received no notice to legally protect its interest when it had a legal right to do so, DIMA Homes was afforded a remedy by the setting aside of the tax sale and effective extension of the redemption period. The chancellor's decision produced a fair result and provided an equitable remedy. The chancery court's judgment setting aside the tax sale and dismissing HL&C Marion's complaint is affirmed.

¶18. **AFFIRMED.**

**GREENLEE, WESTBROOKS, McDONALD, McCARTY AND SMITH, JJ., CONCUR. EMFINGER, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY BARNES, C.J., CARLTON AND WILSON, P.JJ.**

**EMFINGER, J., DISSENTING:**

¶19. The majority opinion affirms the chancellor's decision by using the broad brush of equity to whitewash over the fact that the only "wrong" suffered by DIMA Homes was self-inflicted. There is no question that DIMA Homes' enrolled judgment created a lien against the subject property. There is also no question that DIMA Homes had the right, within the statutory two-year redemption period, to redeem the subject property after it was sold for

13

delinquent taxes. However, the majority then finds, as did the chancellor, that DIMA Homes had a right to be notified by the chancery clerk, in writing, of the date the two-year redemption period would end. Because the chancery clerk did not provide written notice to DIMA Homes, the majority finds that the chancellor did not err by setting aside the tax sale of the subject property. I find no statute or case that required the chancery clerk to give DIMA Homes such notice. Therefore, I respectfully dissent.

¶20.    The majority ignores several important facts. First, DIMA Homes obtained a judgment against the Kennedys after the Kennedys failed to pay the contract price for the construction of their home that DIMA Homes built on the subject property. This is not a situation where DIMA Homes obtained a judgment but was unaware of what, if any, real property the Kennedys owned in the county. Thus, DIMA Homes could have immediately executed on its judgment against the subject property at any point after the judgment became final in November 2013. Second, DIMA Homes knew that it had a lien against the subject property, and it could have, and should have, checked each year to make sure the taxes were being paid, assuming it wanted to protect its lien. Third, once the land was sold for taxes, DIMA Homes, if it had been diligent in protecting its lien, could have redeemed the subject property at any point within the statutory two-year redemption period. As the majority says concerning the chancery clerk, DIMA Homes is charged with knowledge of its rights under the law.[12] DIMA Homes failed to timely do those things that it could do to protect its lien. Instead of

_____

[12] As noted by the majority opinion, "ignorance of the law excuses no one, or that every person is charged with knowledge of the law." *Hoskins v. Howard*, 214 Miss. 481, 497, 59 So. 2d 263, 269 (1952).

14

accepting responsibility for its own inaction, DIMA Homes, the chancellor, and now the majority, blame the chancery clerk for DIMA Homes' loss of its lien against the subject property. DIMA Homes and the majority take the position that if only the chancery clerk had given DIMA Home the "required" notice, DIMA Homes could have protected its lien.[13] Finally and most importantly, neither DIMA Homes, the chancellor, nor the majority point to any authority that requires the chancery clerk to give such notice to a judgment lienholder like DIMA Homes.

## ANALYSIS

I.  **Whether a judgment lienholder is entitled to notice of a tax forfeiture under Mississippi Code Annotated section 27-43-5 (Rev. 2017).**

¶21.    In her ruling, the chancellor found, citing Mississippi Code Annotated section 11-7-191 (Rev. 2019), that DIMA Homes possessed a valid judgment lien that was duly enrolled and served as a lien against the subject property.[14] The chancellor cited Mississippi Code Annotated section 27-45-3 (Rev. 2017) for the proposition that any person with an interest in the land sold for taxes may redeem such land. Next, the chancellor cited *Santa Cruz v.*

---

[13] It is interesting to note that by setting aside the tax sale, DIMA Homes would be back in the same position it was in on November 7, 2013, when it obtained its judgment. However, DIMA Homes apparently did nothing to protect its lien on the subject property until June 13, 2019, when it filed its counterclaim herein, almost six years later!

[14] The chancellor noted in her order that the enrolled judgment entitled DIMA Homes "to priority against any others claiming interest in and to the subject property." The chancellor's order fails to analyze section 11-7-191 in conjunction with Mississippi Code Annotated section 27-35-1(Rev. 2017), which provides that "[t]axes . . . assessed upon lands or personal property . . . shall be entitled to *preference over all **judgments***, executions, encumbrances or liens ***whensoever created***." (Emphasis added).

*State* as authority for her finding that the failure to give notice to a lienor, "**in the manner prescribed by statute**," renders the tax sale void. *Santa Cruz v. State*, 223 Miss. 617, 621, 78 So. 2d 900, 901 (1955) (emphasis added). Finally, the chancellor cited *Perret v. Loflin* as authority for her position that DIMA Homes, as a judgment creditor, had the right to redeem the subject property. *Perret v. Loflin*, 814 So. 2d 137, 140 (¶11) (Miss. 2002). Because DIMA Homes did not receive the statutory notice of the expiration of the redemption period after the property at issue was sold for taxes, the chancellor ordered that the sale and subsequent quitclaim deed be set aside and held for naught.[15]

¶22.    Notice requirements for tax forfeitures are governed by Mississippi Code Annotated section 27-43-5,[16] which provides:

> It shall be the duty of the clerk of the chancery court to examine the record of deeds, mortgages and deeds of trust in his office to ascertain the names and addresses of all mortgagees, beneficiaries and holders of vendors liens of all lands sold for taxes; and he shall, within the time fixed by law for notifying owners, send by certified mail with return receipt requested to all such lienors so shown of record the following notice, to-wit: (form of notice omitted).

The chancellor obviously found that DIMA Homes was entitled to notice pursuant to this statute. However, judgment creditors are not listed as an entity entitled to notice under the provisions of section 27-43-5. In fact, DIMA Homes' counsel admitted in oral argument that

---

[15] The majority does not acknowledge that the chancellor's decision was based upon the failure to give the required statutory notice. Instead, the majority contends that the chancellor simply fashioned an equitable remedy to avoid a harsh result.

[16] These notice requirements for tax forfeitures have remained relatively unchanged since 1930. *See Lamar Life Ins. Co. v. Mente Co.*, 181 Miss. 479, 484, 178 So. 89, 89-90 (1938), **which was cited in the chancellor's order**. That section was only altered in 1995 to eliminate the six-year prior-to-sale limitation on searches, which is not relevant here. 1995 Miss. Laws ch. 468 § 13 (S.B. 2964); 1995 Miss. Laws ch. 381, § 1 (S.B. 2076).

the statute does not specifically provide for notice to a judgment lienor. Further, in its brief on appeal, DIMA Homes admits that it "does not suggest it was entitled to notice as the record owner of the property, as a mortgagee or as the holder of a vendor's lien." Instead, DIMA Homes submits, for the first time on appeal, that it meets the definition of a "beneficiary" for purposes of section 27-43-5. Our appellate courts have consistently held that we will not entertain issues raised for the first time on appeal. *E.g.*, *Ridgeway v. Hooker*, 240 So. 3d 1202, 1210 (¶32) (Miss. 2018). In any event, section 27-43-5 only requires the chancery clerk to "examine the record of *deeds, mortgages and deeds of trust* in his office" and does not require the chancery clerk to examine records maintained elsewhere. (Emphasis added). It necessarily follows that a "beneficiary" under that statute would be found in those records enumerated in section 27-43-5, not in the judgment roll that the circuit clerk would maintain.

¶23. To the extent the chancellor relied upon *Santa Cruz* to find that notice to DIMA Homes was required by statute, such reliance is misplaced. *Santa Cruz* was interpreting sections 3259 and 3260 of the Code of 1930, which like section 27-43-5 required notice to only "mortgagees, beneficiaries and holders of vendors liens." *Santa Cruz*, 223 Miss. 617, 78 So. 2d 900 (1955). *Santa Cruz* dealt with a mortgagee whose interest had merged into becoming the actual landowner. *Id*. The court found that the failure to give notice to the "owner" did not affect the validity of the tax sale. *Santa Cruz* did not involve a judgment creditor and does not support the chancellor's ruling.

¶24. There is no dispute that DIMA Homes, as a judgment creditor, had the right to redeem

the property by paying the delinquent taxes within the statutory redemption period. *Perret* was the first case to hold that a judgment lienholder is "any person interested in the land sold for taxes" within the meaning of section 27-45-3. *Perrett*, 814 So. 2d at 140 (¶11). However, *Perret* does not go further and state that a judgment lienholder is entitled to notice pursuant to section 27-43-5. It should be noted that the description in section 27-45-3 of persons who may redeem is completely different than the description of lienors entitled to notice in section 27-43-5. DIMA Homes' argument that its right to redeem and entitlement to notice are "synonymous" is not supported by statute or caselaw.

¶25.     DIMA Homes and the majority point to *Marathon Asset Management LLC v. Otto,* 977 So. 2d 1241, 1244 (¶8) (Miss. Ct. App. 2008), wherein this court held that the two-year redemption period as set forth in section 27-45-3 is not absolute. In *Marathon*, the Ottos, the parties seeking to redeem, were purchasers at a foreclosure sale that occurred during the redemption period. *Id*. The Ottos were ready to redeem the property during the redemption period and the failure to accomplish redemption was due to the "dilatory actions of a third party." *Id*. at 1244-45 (¶¶10, 12). The court agreed with the chancellor that under the particular facts of that case, an extension of the redemption period was warranted. *Id*. at 1245 (¶12). As stated above, there is no question that DIMA Homes, as a judgment lienor, had the right to redeem the property by paying the taxes until the redemption period expired. However, unlike the foreclosure purchasers in *Marathon* who were prevented from redeeming the property during the redemption period due to continued litigation, nothing prevented DIMA Homes from redeeming the property during the two-year redemption period

18

in this case.

¶26. Here the chancery clerk was not required by any statute, or any case, to provide DIMA Homes with any notice concerning the tax sale or the redemption period. The chancery clerk did nothing wrong. DIMA Homes, however, had the responsibility to protect its own interests. It had the responsibility to know the law, search the public records, at least annually, to make sure the taxes were paid, and if not, pay the taxes or, if sold for taxes, to redeem the property within the statutory two-year period. Any harm suffered by DIMA Homes in this case was a result of its own inaction.

## II. Whether due process requires written notice of the date the redemption period ends be given to a judgment lienholder.

¶27. The majority specifically avoids deciding this case on an interpretation of section 27-43-5. While the chancellor obviously relied upon this statute to provide a notice requirement, the majority relies only upon its interpretation of due process requirements.[17] The majority finds that a judgment lienholder "possesses a substantial property interest that is significantly affected by a tax sale."[18] *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798 (1983). According to the majority, DIMA Homes, as a judgment lienholder, was entitled to written notice of the expiration of the redemption period yet can cite no authority for such a finding.

---

[17] DIMA Homes did not raise a due process argument before the trial court and did not make any such argument on appeal. There is nothing in the chancellor's order that would lead one to believe she based her decision upon any due process violation.

[18] The *Mennonite* case described a mortgagee, under Indiana law, as possessing an "substantial property interest." The majority can point to no Mississippi case where a judgment creditor is said to possess a "substantial property interest" and/or the equivalent due process rights.

19

Then, again without any statutory authority, the majority would place upon the chancery clerk the duty to provide such notice to DIMA Homes in this case because the chancery clerk had "actual notice" of the enrolled judgment.[19]

¶28. There is no authority to support a finding that DIMA Homes' due process rights were violated in this case. The cases cited by the majority concerning due process involve other types of interest in real property. There are two statutes that provide the required notices concerning tax sales and the redemption period. Record owners of land sold for taxes are noticed pursuant to Mississippi Code Annotated section 27-43-1 (Rev. 2017), and lienors are noticed pursuant to section 27-43-5. Those are the groups, under Mississippi law, that are entitled to notice from the chancery clerk. Judgment lienholders do not fall under either of those statutes. I find that there is no due process violation in this case.

### III. Whether it was error to find that the judgment lien in favor of DIMA Homes was not extinguished by the tax sale.

¶29. Mississippi Code Annotated section 27-45-23 (Rev. 2017) provides that upon execution of "deeds of conveyance to individuals purchasing lands at tax sales . . . [s]uch conveyance shall vest in the purchaser a perfect title." Perfect title means title free and clear of liens and encumbrances. "We will assume . . . that the words 'perfect title,' unless used in a more restricted sense, to be gathered from the instrument in which they appear, embrace

---

[19] The majority makes much of the fact that an uncertified copy of a document attached to a DIMA Homes pleading, purporting to be a portion of the chancery clerk's records related to the tax sale at issue, contains a handwritten notation that mentions a judgment in the amount of $94,423. There is no supporting testimony to show when the notation may have been placed on the copy of the document, no evidence as to who put it there, and no evidence that the chancery clerk had actual knowledge of any such notation.

20

not only the right of property and of possession, but also *freedom from liens and incumbrances*." *Howie v. Panola-Quitman Drainage Dist.*, 168 Miss. 387, 151 So. 154, 156 (1933) (emphasis added). In order to convey perfect title, the chancery clerk's deed would have to extinguish DIMA Homes' lien against the property. We find that the judgment lien of DIMA Homes was extinguished as a lien against the property by the tax sale and ultimate conveyance to HL&C Marion.

**CONCLUSION**

¶30.    There was no violation of a statutory notice requirement, no due process violation, and no place for an equitable remedy in this case. Because the chancellor misapplied the law to the facts, the order finding the tax sale of the subject property to ACC Tax Sale Properties LLC and the subsequent quitclaim deed to HL&C Marion to be "cancelled, set aside and held for naught" should be reversed. We should also reverse the finding that DIMA Homes is entitled to redeem the property and reverse the dismissal of the complaint of HL&C Marion. HL&C Marion's cross-motion for summary judgment and cancellation of DIMA Homes' judgment lien should be granted.

**BARNES, C.J., CARLTON AND WILSON, P.JJ., JOIN THIS OPINION.**

21